## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00653-MSK

PATRICIA PEREZ, an individual, on behalf
of herself and others similarly situated,

     Plaintiff,

v.

PINON MANAGEMENT, INC., PONDEROSA CARE
COMMUNITIES A LLC, NORTH STAR COMMUNITY,
and DOES 1 through 10,

     Defendants.

---

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE PURSUANT TO SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT AND INCORPORATED MEMORANDUM OF LAW

---

Plaintiff Patricia Perez ("Plaintiff" or "Perez"), requests the entry of an Order for conditional certification of this collective action and permitting supervised notice to all similarly situated employees who were employed by Defendants, PINON MANAGEMENT, INC., PONDEROSA CARE COMMUNITIES A LLC d/b/a NORTH STAR COMMUNITY (collectively, "Defendants"), over the last three (3) years who were subjected to Defendants' illegal pay practices of failing to overtime for all hours worked in excess of forty (40) in a workweek, and states as follows:

## MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

1.      Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid overtime compensation may be maintained against any employer by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2.      As stated in Plaintiff's Amended Complaint filed on April 30, 2012 (Docket No. 16) ("Complaint"), Plaintiff was a registered nurse ("Nurse") who received an hourly rate of pay for all hours Defendants credited her with having worked.   Plaintiff brought this action on behalf of herself and all current and former similarly situated Nurses who worked for Defendants within the last three (3) years and who did not receive full and proper payment for all hours worked.

3.      The representative class consists of all current and former Nurses who worked for Defendants at any time within the last three (3) years, and who were subjected  to Defendants'  payroll  practices whereby Nurses were required to be clocked out for a thirty

minute break, regardless of whether they were relieved of their duties, resulting in Nurses not receiving credit for all time worked and thus, consequently, overtime pay for all hours worked in excess of forty (40) per week.

4. Among the common plans and/or schemes, applicable to all of Defendants' Nurses in all of Defendants' facilities nationwide, Plaintiff alleges that: 1) under applicable Colorado state law, a Nurse remains responsible for his/her assigned patients, even when they have delegated such supervision to another nurse during their assigned shift (such as covering for a meal break); 2) despite these legal requirements, Defendants require Nurses to take an unpaid "meal break" during their shift (if their shift is scheduled for five hours or more); 3) Defendants have implemented a company-wide policy and practice inappropriately shifting the burden of monitoring "compensable work time" to the individual Nurse, by requiring the individual Nurse alone to notify management when they work through all or part of a meal break; 4) Plaintiff and the putative class were, as a matter of corporate-wide policy, not adequately informed as to what constitutes a compensable meal period; 5) Defendants, as a matter of corporate-wide policy, do not properly advise their managers to monitor when their Nurses do not receive an "uninterrupted meal break"; and 6) Plaintiff and the putative class were subjected to Defendants' uniform failure to monitor when employees did not receive their full, uninterrupted meal break, and ensure that employees in such circumstances were properly paid for this time.

5. As a result of these practices, each Nurse did not and does not receive full and proper compensation for all hours worked over forty (40) in one or more workweeks for Defendants. The named Plaintiff has testified in support of this Motion. Additionally, Plaintiff

submits deposition testimony of Defendants' corporate designees in support of this Motion, as well as Defendants' human resources, payroll and timekeeping policies that are applied to Nurses that are the subject of this Motion.

6.      Simply put, Nurses are owed full and proper payment of their overtime wages and the right to participate in this litigation.  Defendants have acted or refused to act on grounds applicable to all Nurses, thereby making the identical relief appropriate with respect to their current and former Nurses as a whole.  And, although the class of current and former Nurses is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendants' books and records.

WHEREFORE, Plaintiff respectfully requests that the Court permit and supervise notice to the following proposed collective class:

> All Nurses employed by Defendants at any of their facilities at any time during the previous three years who were subject to Defendants' policies requiring Nurses to be clocked out for thirty minutes each shift and who were not completely relieved of their duties.

<u>MEMORANDUM OF LAW</u>

## I.     THE FLSA AUTHORIZES COLLECTIVE ACTIONS

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. See 29 U.S.C. § 216(b). The FLSA provides, in part, that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction *by any one or more employees for and in behalf of himself or themselves and other similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).

Defendants Pinon Management, Inc. ("Pinon") manages nursing home facilities in Colorado and New Mexico.[1]  Since 2009, Pinon has managed sixteen nursing homes, fifteen of which are located in Colorado.[2]  *See* Ex. A, Bogucki Dep. at 14:3-11.  One of the nursing homes

---

[1] As explained in the deposition of Sarah Bogucki, the corporate designee for Pinon, Pinon Management, Inc. was dissolved on December 31, 2011 and became Vivage Quality Health Partners ("Vivage") effective January 1, 2012.  *See* Ex. A, Deposition of Sarah Bogucki ("Bogucki Dep.") 7:23-9:4.  Ms. Bogucki was unable to think of any services that Pinon provided to the nursing homes that Vivage no longer provides. *Id.* at 22:12-17.  Consequently, and to avoid needless confusion, all references to Pinon will necessarily include references to Vivage post January 1, 2012, unless expressly stated otherwise.

[2] These facilities include, *inter alia*: (i) Amberwood Rehabilitation & Care Community; (ii) Brookshire House; (iii) Christopher House Rehabilitation & Care Community; (iv) Colorow Health Care, LLC; (v) Fairacres Manor; (vi) Highline Rehabilitation and Care Community; (vii) Holly Nursing Care Center; (viii) Laguna Rainbow Elder Care; (ix) North Star Rehabilitation and Care Community; (x) Parkview Care Center; (xi) Rowan Community; (xii) Sierra

that it has managed during the relevant time period is Ponderosa Care Communities A LLC d/b/a North Star Community ("North Star") (together with Pinon, "Defendants"). *Id.* at 14:12-15.[3] During the period March 14, 2009 through March 14, 2012, North Star employed 42 Nurses. *See* Exhibit P (Interrogatory Response #4, p. 33). North Star is about the average size of the nursing homes that Pinon manages. Ex. A, Bogucki Dep. at 160:6-11.

As part of its management responsibilities, Pinon provides its nursing homes with a "framework for nursing homes in areas such as nursing, activities, financial management, social services, dietary, reimbursement . . . Medical records[,] Human resources . . . [a]nd life enhancement." *Id.* at 15:19-16:1. Pinon also identifies the payroll system to be utilized by the individual nursing home facility. *Id.* at 16:7-9. By way of example, fourteen of the sixteen facilities managed by Pinon converted to the Paycom system in January, 2010. *Id.* at 126:3-7. Under the Paycom system, an employee "clocks in" and "clocks out" of the system by placing their finger on a scanner. Notably, if a nursing home's facility personnel are unavailable, certain Pinon employees have the ability to complete payroll to ensure that staff at an individual facility are paid on time. *Id.* at 130:1-16.

---

Rehabilitation and Care Community; (xiii) Summit Rehabilitation and Care Community; and (xiv) Valley View Healthcare. *See* Exhibit Q (Interrogatory Response #2, p. 5-32).

[3] Pinon can also provide discrete services to nursing homes on specific topics without providing overall management services; however, these nursing homes are not included in the sixteen that Pinon regularly manages. Ex. A, Bogucki Depo. at 32:20-33:9. Consequently, these nursing homes are not subject to the instant motion.

Indicative of the interplay between Pinon and the nursing home facilities it managed, if a nursing home facility was without a Nursing Home Administrator ("NHA")[4], a Pinon NHA project specialist would act as the NHA until a NHA was put into place. Ex. A, Bogucki Dep. at 26:25-27:8. Moreover, clinical liaison staff (Pinon employees) would visit hospitals and other entities to visit "individuals who would be looking for services in a nursing home." *Id.* at 29:17-30:2. Further, there are regularly scheduled meetings between Pinon, the nursing homes' NHAs and the nursing homes' Director of Nursing ("DONs"). *Id.* at 37:8-18; 42:20-25.[5]

As part of the services that it provides the nursing homes, Pinon provides the nursing homes with a model employee handbook. Ex. A, Bogucki Dep. at 44:5-8.[6] If requested, Pinon also provided the nursing home with job descriptions, including job descriptions for registered nurses and licensed practical nurses. *Id.* at 81:5-24. Pinon also provides each of its nursing homes with a sample "new hire checklist." *Id.* at 142:7-22. Pinon's corporate designee did not know if the new hire checklist included a specific line item for the meal break policy. *Id.* at 142:23-143:4. Rather, any information pertaining to the meal break policy was included in the employee handbook. *Id.* at 143:13-17.

---

[4] Nursing Home Administrators are the most senior position at an individual facility.

[5] Notably, the NHAs, DONs, and BOMs are all provided with a Pinon email address (now a Vivage email account). Ex. A, Bogucki Dep. at 134:8-14.

[6] Currently, Vivage does not provide a model employee handbook to two facilities that it manages, Woodridge and Laguna (the facility located in New Mexico). Ex. A, Bogucki Depo. at 43:15-44:4.

In addition, Pinon affirmatively provides human resource policies to the nursing homes it manages. One such policy, is Policy # FBOM.7701.0, "Employee Time Records." *See* Ex. D, (Bates #NS000125-26). This policy was distributed to all the NHAs and all of the nursing homes' business office managers. Ex. A, Bogucki Dep. at 52-57. The policy was implemented at every facility. *Id.* at 56:20-57:2. The new policy would require every employee to clock out for their meal break. *Id.* at 57:14-19. Prior to dissemination of this new HR policy, hourly employees who worked at an individual nursing home for longer than five hours automatically had thirty minutes deducted from time records in order to account for a presumed meal break. *Id.* at 59:13-25.[7]

Defendants may argue that it is the expectation of Pinon that every facility that it manages pay its employees in conformity with both Colorado and federal labor laws. Ex. A, Bogucki Dep. at 89:15-18. Every model employee handbook prepared by Pinon (except the New Mexico facility) contains the following information regarding an employee's meal break:

> You are required to take an uninterrupted and "duty free" unpaid meal period of 30 minutes when scheduled to work for five or more hours. If required to work during your meal period by your supervisor or an emergency situation, you will be compensated for this time.

Ex. A, Bogucki Dep. at 91:7-12, 92:22-23. Notably, this same language was included in the employee handbook that was disseminated to North Star employees. *See* Ex. E, Bates No. Pltff Perez_000009.

---

[7] The automatic deduction policy ceased being used at the nursing homes by April 2010. Ex. A, Bogucki Dep. at 74:16-21.

Unfortunately, employees are not provided any information regarding what constitutes an emergency situation, and thus a compensable meal break; rather, that determination is left to "the perception of the employee." Ex. B, Deposition Transcript of Marcia H Brenowitz ("Brenowitz Dep. at 154:15-19. Moreover, Pinon did not provide its nursing homes with any explanation as to what constituted an interrupted meal period. Ex. A, Bogucki Dep. at 95:21-24; 99:8-19; *see also* Ex. C, Deposition Transcript of Patricia Perez ("Perez Dep.") at 71:5-6 (regarding interrupted meal breaks stating " I never had policy explained to me about such an occasion"). Rather, it simply assumed that the individuals would know what they meant. *Id.* at 95:21-96:1 ("I made the assumption that individuals there would know what the definition of interruption was"). Indeed, as Ms. Bogucki testified, she would not provide any explanatory information regarding the meal break policy unless contacted by a facility representative. *Id.* at 94:19-95:2. Similarly, Pinon did not provide any material to the individual facilities notifying the facility that they had a duty to ensure that the employee's meal period was not interrupted, *id.* at 99:20-100:1, or that the meal period was suppose to be "duty free." *Id.* at 100:2-8. Moreover, although Pinon recognizes that it is the employer's responsibility to keep accurate time records, *see* Ex. F, Bates #NS003001 ("It is our responsibility as employers to keep accurate records of employees' work time"), Pinon only provided the individual facility with the policy, a missed punch form (to reclaim missed meal breaks), and a "reliable payroll vendor." Ex. A, Bogucki Dep. at 125:3-126:2. As the corporate designee for North Star succinctly stated, Defendants "rely on the employee to responsibly report their time worked." Ex. B, Brenowitz Dep. at 207:1-2; cf Ex. C, Perez Dep. 60:10-14 (testifying that she was not told to submit a missed punch form if she

worked during her unpaid lunch break). Indeed, the "supervisor's responsibility" was simply to "hold their employees accountable for recording their time accurately." Ex. A, Bogucki Dep. at 58:19-21.

However, as set forth in the Complaint, under applicable Colorado law, a registered nurse remains responsible for his/her assigned patients, even when they have purportedly delegated such supervision to another nurse during their assigned shift (such as covering for a meal break). *See* Complaint ¶46 (citing the Rules and Regulations Regarding the Delegation of Nursing Tasks). In addition, the Complaint details how, in order to be considered compliant with the legal requirement of "supervision," registered nurses in Colorado, including Plaintiff and the putative collective class, are required to periodically inspect "the actual act of accomplishing the task or activity" that was delegated. *Id.* at ¶47 (citing 3 CCR 716-1 § 3.12). Consequently, under applicable Colorado state law, registered nurses were always responsible for their patients and were required to regularly supervise (and thus performed compensable work during) any work they purportedly delegated to another individual. *Id.* at ¶50. Moreover, the job duties and responsibilities of Plaintiff and the other Nurses necessarily required Nurses to remain on duty during their unpaid meal break and perform job responsibilities during this time. *Id.* at ¶¶ 39-45; *see also* Ex. C, Perez Dep at 281:25-282:19.

As set forth herein, under applicable Colorado law, Nurses could not be considered "duty free" while at the facility and were thus required to be paid for this time. Despite this plain truth, Defendants enforced the aforementioned time-keeping system without regard to the circumstances of the individual employee. Ex. A, Bogucki Dep. at 115:1-5 (acknowledging that

she does not recall any discussions regarding whether certain nurses would qualify for on-duty/compensable meal periods). Pinon's corporate designee[8] does not recall discussing the requirements of a compensable meal period, as set forth in Colorado's Minimum Wage Order No. 26, with any personnel. *Id.* at 113:2-24.

Rather than focus on these legal requirements, Pinon's communications with its facilities emphasized minimizing overtime, even among the facilities' Nurses. In an email from the Vice President of Operations for Pinon, Bruce Odenthal, to all NHAs, DONs, and BOMs (amongst others) dated January 26, 2012, it was noted that the facilities "have slipped in a lot of our buildings in managing our overtime in all departments. Nursing has been most troublesome . . ." *See* Ex. G, Bates #NS003712. In a subsequent email sent by the NHA of North Star to key management personnel, it was stated if overtime was accrued, it was expected that management would have "a major reduction to make the next day to cover it." *Id.* Further, management kept a keen eye on precisely which employees were accruing overtime. *See, e.g.,* Ex. H Bates #NS003714-716 (listing employees and stating "RN's are over 1.44 hours of overtime. You will need to cut 3 hours to offset this."). Notably, Defendants also knew exactly how much time needed to be cut from an employee's time to avoid overtime. *See id.* at NS003716 (employee "has already incurred overtime and would need to cut 2.86 hours to offset her time incurred.").

In 2011, an in-service meeting of all nursing staff was held at North Star where, according to the required sign-in sheet, "No overtime is authorized at this time for any nursing

---

[8] Notably, Sarah Bogucki, Pinon's 30(b)(6) corporate designee, was for much of the relevant time period the most senior HR person within Pinon.

staff" and employees were notified that management would be "checking all nursing overtime so make sure you do not have any!"  *See* Ex. I, Bates #NS003394; *see also* Ex. J, Bates #NS003637 ("We cannot have any nurse managers with a minute of overtime").

Further, in an email from the individual responsible for finalizing payroll for the North Star facility, it was stated that an employee "needs to be counseled . . . because he has not taken several lunches" and that payroll was "not adjusting them."  *See* Ex. K, Bates #NS003568.  The same individual stated in other email correspondence that she "will not pay anything that is not verified by the supervisor . . ." (*see* Ex. L, Bates #NS003605) and that 95 reclaimed meal breaks was excessive and that employees "need to clock in and out [for lunch and] that is not by choice."  *See* Ex. M, Bates #NS003560; *see also* Ex. N, Bates #NS000190 ("All staff are to clock in + out for break").  Defendants went so far as to notify Nurses at the Holly facility in October 2011 that if they did not clock out for lunch, thirty minutes "will be automatically deducted from [their] total hours that shift for payroll purposes."  *See* Ex. O, Bates #NS003904.

In short, as averred in the Complaint and Plaintiff herself testified, Defendants implemented a system whereby Nurses worked in conditions whereby they either could not be relieved from their job duties (i.e., they were the only Nurse on duty)[9] or were put in a situation whereby they could not properly claim a missed meal break.[10]  Accordingly, all Nurses within

---

[9] *See*, *e.g.*, Ex. C, Perez Dep. at 207:19-20 (stating that she was the only RN in the building).

[10] *See*, *e.g.*, Ex. C, Perez Dep. at 136:8-16 (explaining that she completed missed punch form, indicating she took a  lunch, as she was required to do so, despite the fact she didn't take any lunches because she has to take care of her patients).

the defined class are owed full and proper payment of their overtime wages and the right to participate in this litigation. It is undisputed that Defendants have acted, or refused to act, on grounds applicable to all Nurses who are the subject of this Motion, thereby making the identical relief appropriate with respect to current and former Nurses within the defined class as a whole.

As such, Plaintiff seeks to conditionally certify a class of all Nurses who were subjected to the illegal pay practices described above at any time within the last three (3) years.

## II. APPLICABLE STANDARD FOR COLLECTIVE ACTIONS IN THIS CIRCUIT

### A. AUTHORITY TO SEND CLASS NOTICE

"Section 216(b) of the FLSA provides the exclusive means of bringing [] class-wide claims to redress alleged violations of the FLSA." *Young v. Dollar Tree Stores, Inc.,* No. 11-cv-01840-REB-MJW, 2012 U.S. Dist. LEXIS 121125, *2 (D. Colo. Aug. 24, 2012). Pursuant to Section 216(b) of the FLSA, an employee belonging to a "similarly situated" class of plaintiffs must "opt-in" to action by filing a written consent with the Court. Absent the filing of such a consent form, otherwise eligible individuals are not considered part of the class. The Tenth Circuit has expressly held that the standards of Rule 23 certification have no bearing on determining whether someone is "similarly situated" under 216(b). *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001)(to "interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 . . . would effectively ignore Congress' directive.").

In the seminal case *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989), the United States Supreme Court ruled that not only did trial courts have authority to compel defendant-

employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id* at 170. The Court determined that district courts have discretion in appropriate cases to facilitate notice to potential plaintiffs. *Id.* The Court held that authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id.* Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "…depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*.

> **B.** **AT THIS STAGE, THE TENTH CIRCUIT REQUIRES ONLY MINIMAL EVIDENCE TO SUPPORT CONDITIONAL CLASS CERTIFICATION OF A CLASS OF SIMILARLY SITUATED WORKERS.**

Under 29 U.S.C. § 216(b), plaintiffs ask the court to conditionally certify a collective action for the purpose of providing notice to putative class members. Section 216(b) provides in part that "[a]n action ... may be maintained against an employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This provision provides the exclusive procedural mechanism for class certification in actions under the FLSA. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004). Though the FLSA does not define the phrase "similarly situated," the Tenth Circuit has approved an *ad hoc* approach by which courts determine on a case-by-case basis whether members of a putative class are similarly situated. *See Thiessen*, 267 F.3d at 1105.

Under this approach, the court engages in a two-step process. First, the court makes an initial "notice stage" determination which requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan. *Id.* at 1102 (*quoting Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo.1997)); *see also Smith v. Pizza Hut, Inc.,* No. 09-cv-01632-CMA-BNB, 2012 U.S. Dist. LEXIS 56987 (D. Colo. April 21, 2012) (granting conditional certification were plaintiff provided "'substantial allegations' that the potential class members were 'together the victims of a single decision, policy or plan.'")(quoting *Thiessen*, 267 F.3d at 1102). At this preliminary stage, the court simply decides whether a collective action should be certified for purposes of sending notice of the action to potential class members.[11] *Brown*, 222 F.R.D. at 679. Importantly, a lenient standard is applied by the court during this initial step and, consequently, conditional certification of a representative class is typically granted. *See Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1166 (D. Kan. 2006); *see also Darrow v. WKPR Management,*

---

[11] The lenient standard applied by courts at the first stage of certification (i) facilitates the broad remedial purpose of the FLSA and (ii) promotes efficient case management. *See Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). Indeed, applying the lenient first tier analysis is the most equitable, especially considering the fact that notice has not been disseminated and thus most class members are likely unaware of this lawsuit. *See, e.g., Bouaphakeo v. Tyson Foods, Inc*., 564 F. Supp. 2d 870, 894-95 (N.D. Iowa 2008) ("The court is persuaded by the sentiments of other district courts that 'beginning with tier one of the analysis is the most equitable means of proceeding. . . .[S]hould the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. . . .The potential prejudice to plaintiffs of bypassing tier one thus is significant'").

*LLC*, No. 09-cv-01613-CMA-BNB, 2012 U.S. Dist. LEXIS 24997, **6-7 (D. Colo. Feb. 28, 2012)(noting the "lenient" standard applied at the notice stage).[12]

### C. COURTS FOCUS ON A COMMON SCHEME OR PLAN AND DO NOT REQUIRE OPT-INS TO HAVE ALREADY JOINED WHEN DETERMINING WHETHER TO GRANT NOTICE

#### 1. Common Scheme or Plan

In determining whether to grant notice of a collective action, courts focus on whether plaintiffs were victims of a common scheme or plan that violated the law. Plaintiff need not conclusively demonstrate that he and the other putative class members are, in fact, similarly situated. Rather, she must show that she "and potential plaintiffs together were victims of a common policy or plan that violated the law." *See e.g. Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007) (*citing Brown*, 222 F.R.D. at 681)("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of single decision, policy or plan.").

Here, Plaintiff has met that burden by showing that Defendants have common policies, applicable to all Nurses employed at all of its facilities, whereby: (1) Defendants requires every Nurse to clock out for a mandatory thirty (30) minute break for each shift of five (5) hours or

---

[12] Typically after the close of discovery, the Court utilizes a stricter standard in this two-step process and evaluates several factors, including (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Thiessen*, 267 F.3d at 1102-03.

more, without ensuring that the Nurses are in fact given uninterrupted, duty free breaks of thirty (30) minutes[13]; and (2) requires Nurses to record thirty (30) minute mandatory breaks even in instances were no break was actually taken. Compounding this problem, Nurses are required to make independent determinations, without any guidance from Defendants, regarding what constitutes a compensable meal break. *See, e.g.,* Ex. B, Brenowitz Dep. at 154:18-19 (what constitutes an "emergency situation" as set forth in the employee handbook is left to "the perception of the employee.").

Consequently, Plaintiff seeks notification of this lawsuit to the following proposed conditionally certified collective class:

> All Nurses employed by Defendants at any of their facilities at any time during the previous three years who were subject to Defendants' policies requiring Nurses to be clocked out for thirty minutes each shift and who were not completely relieved of their duties.

Notably, this is a substantially more refined class than that which was recently conditionally certified in *Stransky v. HealthOne of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 U.S. Dist. LEXIS 182875, **13-14 (D. Colo. Dec. 14, 2012)(rejecting defendant's request to limit the scope of the class and conditionally certifying a collective class comprised of "ALL CURRENT OR FORMER NON-EXEMPT EMPLOYEES . . .").

---

[13] Prior to the mandatory clocking in-out for lunch, Defendants engaged in an automatic deduction policy whereby thirty minutes was automatically deducted from an employee's time entries regardless of whether an actual meal break was taken – unless an employee took steps to affirmatively cancel the deduction.

### 2.     Plaintiff's Proof Exceeds the Evidence Required at This Stage

In this Circuit, district courts typically do not require opt-in plaintiffs to have already joined the case prior to ordering dissemination of notice. *See, e.g., Courtright v. Bd. of County Comm'rs of Payne County, Okla.*, No. CIV-08-230-D, 2009 U.S. Dist. LEXIS 33942 (W.D. Okla., Apr. 21, 2009)(granting conditional certification motion based on single affidavit of plaintiff); *Wood v. Sundance Professional Services, LLC*, No. 08-cv-2391-JAR, 2009 WL 484446 (D. Kan. 2009)(granting 216(b) motion based on affidavits of two plaintiffs). Indeed, there is no need for a plaintiff to demonstrate an interest in others joining the lawsuit prior to conditional certification. *See, e.g., Courtright*, 2009 U.S. Dist. LEXIS 33942, *8 ("This Court concludes that the Tenth Circuit would not require a showing of additional plaintiffs as a pre-condition to 'notice stage' certification and that Plaintiff's substantial allegations of class-wide policies and practices in this case are sufficient."); *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002)("the number of persons who wish to join the action is not a factor" to be considered "in determining whether to grant Plaintiffs' motion to certify."). Indeed, plaintiffs are not even "required to show that other putative class members actually exist." *Stransky v. HealthOne of Denver, Inc.*, 2012 U.S. Dist. LEXIS 182875, *13.

In the instant action, even though not required to do so under the liberal standard employed within this Circuit, Plaintiff has clearly demonstrated that other putative members exist and should be notified of this pending action. As noted above, Defendants employed hundreds of Nurses during the relevant time period, each of whom had to meet the same basic requirements of Colorado's nursing requirements. Further, these Nurses were all subjected to the

complained of HR policies and, consequently, were required to perform off-the-clock work without compensation and thus denied overtime wages when such work brought their total hours for the week above forty.

Consequently, a collective action is eminently appropriate as Defendants have acted or refused to act on grounds generally applicable to the putative Collective Class, thereby making appropriate the same relief with respect to the Collective Class as a whole. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy. Indeed, allowing notification to the potential class of all Nurses through the conditional certification process will necessarily avoid the possibility of hundreds of individual lawsuits where, as here, hundreds of employees have allegedly been harmed by the same violation. *See, e.g., Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).

**D. CASES INVOLVING REQUIRED THIRTY MINUTE BREAKS ARE WELL- SUITED FOR COLLECTIVE ACTION TREATMENT**

As district courts in this Circuit have aptly noted, wage and hour claims arising from common procedures of employers are well-suited for class treatment. *See, e.g., Bass v. PJCOMN Acquisition Corp.*, 2011 U.S. Dist. LEXIS 58352, at *7 (D. Colo. June 1, 2011). Moreover, because cases involving working during unpaid meal periods involve policies that are necessarily one-size fits all or the same for all employees, federal courts routinely certify classes regarding wage and hour claims arising from claims of performing work during unpaid meal breaks. *See, e.g., Young*, 2012 U.S. Dist. LEXIS 121125, *10 (granting conditional certification to a collective class where plaintiff alleged that she was required to perform work during unpaid

meal breaks); *Stransky*, 2012 U.S. Dist. LEXIS 182875 (granting conditional certification where plaintiffs alleged, *inter alia*, working during uncompensated meal breaks)[14]; *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 830 (N.D. Ohio 2011) (conditionally certifying classwhere plaintiffs alleged employers' policy of automatically deducting 30-minute meal periods from hourly defendants improperly shifted burden to employees to ensure non-qualifying meal breaks were not deducted from their pay).[15]

---

[14] The *Young* and *Stransky* conditional certification decisions in-and-of-themselves support a granting of conditional certification. *See Darrow v. WKPR Management, LLC,* No. 09-cv-01613-CMA-BNB, 2012 U.S. Dist. LEXIS 24997, *10 (D. Colo. Feb. 28, 2012)(finding certification in analogous cases supports contention that plaintiffs have satisfied the Tenth Circuit's lenient standard for conditional certification).

[15] *See also Lindberg v. UHS of Lakeside, LLC*, 761 F.Supp.2d 752, 759–61 (W.D.Tenn.2011) (conditionally certifying a collective action based on an automatic time deduction policy "that placed the burden of correction on hourly employees, [defendants] were aware of, permitted, and/or demanded that employees continue to work during unpaid meal periods, and [defendants] routinely ignored or discouraged the use of time adjustment forms to reverse the automatic deduction"). Indeed, courts have also granted Rule 23 certification for analogous state law claims. *See, e.g., Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 U.S. Dist. LEXIS 102173 (E.D. Pa. Sept. 9, 2011)(certifying class under Pennyvania state law, in part, based on allegations of impermissible automatic meal deductions); *Martin v. Psalms, Inc.*, No. 2:10-cv-02532-STA-dkv, 2011 U.S. Dist LEXIS 77245 (W.D. Tenn. July 15, 2011) (certifying rule 23 class based on plaintiff's claim of unjust enrichment arising from defendant's policy of automatic lunch deductions, where plaintiff's alleged they regularly worked through such "breaks"); *Bond v. Ferguson Enterprises, Inc.*, No. 09-cv-1662, 2011 U.S. Dist. LEXIS 70390, at *13 (E.D. Cal. June 30, 2011) (certifying a class of employees based, in part, on their allegation that defendant automatically deducted thirty minutes worth of working time on the basis of the unverified assumption that employees always took a half-hour, off-duty meal break); *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)(certifying class under New York law, arising from allegations of automatic meal deductions, where plaintiffs alleged they were required to work through such lunch periods).

Here, because Defendants subjected all of their Nurses to a common scheme, whereby it requires Nurses to clock out for thirty minutes, irrespective of whether an uninterrupted, duty free meal break is even possible, this case is likewise suitable for conditional certification.

## III. FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A. ALTHOUGH SOME DISCOVERY HAS OCCURRED, THE LENIENT FIRST STAGE ANALYSIS STILL APPLIES

Admittedly, some discovery has occurred in this matter. Indeed, to date, the parties have exchanged document requests and interrogatories, produced responsive documents, deposed the Named Plaintiff and two of Defendants' 30(b)(6) designees. Based on the foregoing, it is anticipated that Defendants will ask this Court to ignore the long established preference for a two-stage certification process routinely used in this Circuit and embark on the more rigid second stage analysis because some discovery has been conducted. As set forth herein, this proposition has been routinely rejected by district courts in this Circuit.

For example, in *Smith v. Pizza Hut, Inc.*[16], a sister court in this District rejected defendant's contention that because the case was over two years old and some discovery had occurred, including the production of more than 5,100 pages of documents and numerous depositions, the court should bypass the notice stage and proceed directly to the second stage analysis. *Id* at *11. The court in *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166-67 (D. Kan. 2006), also rejected a similar proposition even though over 6,000 pages of documents were produced and multiple depositions had occurred. Further, the court in *Pack*

---

[16] No. 09-cv-01632-CMA-BNB, 2012 U.S. Dist. LEXIS 56987 (D. Colo. April 21, 2012).

*v. Investools, Inc.*, No. 09-cv-1042, 2011 U.S. Dist. LEXIS 92662 (D. Utah Aug. 18, 2011), rejected defendant's invitation to bypass the notice stage even though nearly 9,000 pages of documents were produced and defendant had responded to plaintiff's interrogatories and requests for admissions. Finally, in an analogous case asserting failure to pay for time worked during unpaid meal breaks, the *Young* court rejected defendant's assertion that a review of the evidence would demonstrate that plaintiff was not similarly situated to members of proposed conditional class. *Young*, 2012 U.S. Dist. LEXIS 121125, **6-7.

Through the allegations in the Complaint, and the evidence produced to date, Plaintiff has provided sufficient evidence to warrant dissemination of notice of this action to Defendants' Nurses. Because the "similarly situated" determination at the notice stage is preliminary, Defendants will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial. Accordingly, Plaintiff's motion for conditional certification should be granted.

**B.** **THE "MERITS" OF PLAINTIFF'S CLAIM ARE NOT CONSIDERED WHEN DETERMINING WHETHER TO GRANT CONDITIONAL CERTIFICATION**

Plaintiff anticipates Defendants will argue notice should not proceed because Plaintiff and her fellow Nurses were properly paid pursuant to the Fair Labor Standards Act. Although Plaintiff believes this defense will ultimately fail, such arguments regarding the factual nature of Plaintiff's claims and Defendant's defenses thereto are irrelevant at this stage of the proceedings. *See Young*, 2012 U.S. Dist. LEXIS 121125, *6 (despite significant discovery having been

conducted, determining that it is "premature to examine the evidence" until the close of discovery).  As has been the long established practice in this Circuit, at the "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated."  *See McCaffrey v. Mortgage Sources, Corp.*, No. 08-2660-KHV, 2009 U.S. Dist. LEXIS 77028, **11-12 ("The Court will not reach the merits of plaintiffs' claims on the motion for conditional certification, particularly when defendant's argument is more appropriately raised in a motion to dismiss or a motion for summary judgment."); *Gipson v. Southwestern Bell Telephone Co.*, No. 08-cv-2017, 2009 U.S> Dist. LEXIS 33478 (D. Kan. 2009)(finding defendant's arguments directed at the merits of plaintiffs' claims, regarding such items as disparate employment settings, organizational differences between call centers, and defenses against particular plaintiffs, to be more appropriate to consider at the second stage analysis).  Even variance in the calculation of damages does not militate against conditional certification.  *See Darrow*, 2012 U.S. Dist. LEXIS 24997, *13.

While, as noted above, the merits of Plaintiff's claims are not at issue in determining the propriety of whether to "conditionally" certify this collective action, a brief discussion of Defendants' meal break policy demonstrates how all Nurses are similarly-situated with respect to the policy (regardless of the policy's legality) and thus entitled to notice of this action.

Simply stated, Defendants' meal break policy violates the FLSA because (i) Defendants' improperly attempt to shift the burden for accurately accounting for its employees' meal time to the employees themselves and (ii) Defendants do not "ensure" that employees actually stop

working during their meal breaks, despite mandating that Nurses punch out for thirty minutes. To the contrary, Defendants actually encourage their employees to work off-the-clock. If the employer's policy permits its employees to work through their meal period – and certainly if it knows and encourages them to do so – it is simply improper for that employer to require the employee, here Plaintiff and the other Nurses, to surrender otherwise compensable time. The obvious result is that Nurses are not paid for all the time they worked.

Under the FLSA, all time which employees are "suffer[ed] or permit[ted]" to work must be compensated. 29 U.S.C. § 203(g). The regulations state that "Work not requested but suffered or permitted is work time . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time." 29 C.F.R. § 785.11. As such, "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13.

Recognizing the broad remedial purpose of the statute, the Supreme Court has interpreted the FLSA very broadly, requiring that employees receive compensation for any time they are suffered or permitted to work, noting that "[a] broader or more comprehensive coverage of employees…would be difficult to frame." *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945). Accordingly, if employers know or have reason to know that employees are working, such time is compensable. *See Reich v. S. New England Telecomms.*, 121 F.3d 58 (2d Cir. 1997); *see also* 29 C.F.R. § 825.105 ("[m]ere knowledge by an employer of work done for the employer by another is sufficient to create" liability); 29 C.F.R. § 785.11 (if an employer knows or has reason to believe that an employee is continuing to work the time is working time).

As set forth in the Complaint, and explained during her deposition, Plaintiff and other employees routinely work through their meal break. Ex. C, Perez Dep. at 110:10-11(stating "I recall not taking a lunch on nearly all of my shifts"); Perez Dep. at 212:15-25 (explaining that other Nurses complained to her about not being able to take their meal breaks). Indeed, in several instances, Plaintiff simply could not be relieved of her duties as she was the only Nurse in the unit. *See* Ex. C, Perez Dep. at 37:7; see also Perez Dep at 37:15-16(stating "so it was never 30 minutes without any responsibility"). Respectfully, Defendants cannot now claim that Plaintiff was not working when she was the only Nurse on the floor. Defendants' protestations to the contrary simply fall woefully short of their legally-mandated obligations under the FLSA.

It is anticipated that Defendants will argue that they are not liable because Defendants provide an opportunity for employees to "reclaim" their missed work time. This argument, however, is irrelevant because, under the FLSA, employers cannot place the burden upon employees to make sure all of their work time is paid. *See, e.g., Mendez v. Brady,* 618 F. Supp. 579 (W.D. Mich. 1985) (noting that management has an affirmative duty to exercise control over its employees and not accept benefit of employees working without compensating them for such time). Indeed, the DOL has explicitly stated that an employer must pay for time an employee works at a health care facility during a meal break, even when the employee fails to record such time as required by the employer's policy.

> Q1: If an employee fails to take a meal break and does not notify the manager that he did so in direct violation of the policy, is additional … compensation due…?

A1:     Work not requested but suffered or permitted is work time.' 29 C.F.R.
        § 785.11.  Thus, the employer must compensate the employee for all hours
        worked including the time worked during the missed meal period.

Ex. R, U.S. Dep't of Labor Opinion Letter, FLSA 2008-7NA, May 15, 2008.

This rule is entirely consistent with the statutory and regulatory language requiring payment of any time the employee was "permitted" to work (instead of being limited to the amount of "recorded" time).   Any other approach would create an opportunity for employers to intimidate their employees into working without compensation, something that the FLSA was explicitly crafted to avoid.  Accordingly, the issue presented in this case is whether Defendants' common policy "ensured" that the employees did not work during their meal break; in every instance, rather than meet this exacting standard, Defendants chose to rely upon their requirement that employees' "take a break."   Indeed, Defendants turned a blind eye as to whether Nurses were taking uninterrupted breaks.   *See, e.g.*, Ex. C, Perez Dep. at 106:12-13 (stating "I was instructed to fill it out for a half-an-hour lunch break whether I took one or not.").

Moreover, Defendants attempt to shift the statutory responsibilities to its employees regarding accounting for their meal breaks in of itself is adequate grounds for collective certification.  *See Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May 14, 2009) (granting collective certification and holding that the medical center's "arguable attempt to shift statutory responsibilities to [its] workers constitutes an 'employer policy' susceptible to challenge at this stage in the proceedings").   Defendants may argue that, due to their corporate structure, the complained of policies were localized policies and were not centrally implemented and enforced.   As a preliminary matter, this argument is belied

by the facts.  Moreover, this argument does not defeat conditional certification and notice.  Even when defendant's policy is arguably "decentralized," courts still grant conditional certification in situations where the policy, even if not spawned from a centralized authority, is nevertheless commonly adopted across the class.  *See, e.g., Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 U.S. Dist. LEXIS 37998, at *17 (N.D. Ill. Dec. 22, 2005) (rejecting defendant's claims that decentralized management made it "impossible" to maintain a common plan or policy); *see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (issuing notice despite defendant's claims that staffing decisions were "highly decentralized" and that employees comprising class were employed at 112 different locations in 74 different jobs).

Here, all Nurses, regardless of the unit or facility they worked at, were subject to the uniform policies outlined above.  Moreover, all collective action members, like Plaintiff, suffered under Defendants' inappropriate attempt to require them (the Nurses) to ensure that their meal breaks were appropriately accounted and compensated for.  Accordingly, dissemination of notice is eminently appropriate.

## IV.    PLAINTIFF'S NOTICE SHOULD BE POSTED AT ALL OF DEFENDANTS' FACILITIES

Plaintiff proposes that the Court-supervised notification include all Nurses employed within the last three (3) years at any of Defendants' facilities nationwide.  Plaintiff has demonstrated that there are potentially hundreds of similarly situated Nurses that had similar duties, were paid in the same manner and were uniformly subjected to Defendant's pay policies that form the crux of Plaintiff's Complaint.

## A.    THE NOTICE SHOULD BE POSTED AT DEFENDANTS' FACILITIES

In addition to being disseminated by first class mail, Plaintiff also requests that the Notice[17] be posted at each of Defendants' locations.  *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 447 (S.D.N.Y. 2011)(authorizing posting of notice to carry out remedial purposes of FLSA); *Ford v. Townsends of Ark., Inc.*, No. 08-cv-00509 BSM, 2010 U.S. Dist. LEXIS 46093, at *25-26 (E.D. Ark. May 24, 2010)(same); *Cranney v. Carriage Servs., Inc.*, No. 07 CV 1587, 2008 U.S. Dist. LEXIS 22630, *16 (D. Nev. Feb. 29, 2008) (ordering notice to be posted in defendants' locations, e-mailed to employees, publicized in employee newsletter as well as mailed to employees).[18]    Under the FLSA the statute of limitations continues to run daily, diminishing the injured employees' ability to collect damages. Accordingly, posting of the Notice will facilitate prompt dissemination of the Notice and further the broad remedial purpose of the FLSA.

## B.    NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS

Notice to the collective action members should be expedited to prevent the wasting of the employee's claims since, under the provisions of the FLSA, the statue of limitations is not tolled

---

[17] Upon this Court's entry of an order certifying this action as a collective action, Plaintiff shall meet and confer with Defendants to agree upon a proposed Notice and shall submit the proposed agreed upon Notice for this Court's review.

[18] *See also Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E. D. Cal. Apr. 19, 2006)(finding that first class mail, combined with posting provided for the "best notice practicable" to the potential class); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards reasonable).

for any individual collective member until that individual has filed, in court, a written consent to join the action. 29 C.F.R. § 790.21(b)(2). Thus, in order to protect the interests of the collective action members, prompt dissemination of notice is essential. *See Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (ordering notice to all employees who were employed within the maximum, three year statute of limitations); *Herrera v. Unified Mgmt. Corp.*, No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406, *5 (N.D. Ill. Aug. 18, 2000) (finding it more efficient, if necessary, to later restrict the class rather than subsequently expand the class and send an additional forms of notice).

## V. CONCLUSION

For all of the foregoing reasons set forth above, Plaintiff has clearly met all of the requirements of conditional collective action certification under 29 U.S.C. § 216(b). Accordingly, Plaintiff respectfully requests that this Court enter an order:

(1) requiring Defendants produce to Plaintiff a list – within thirty days and in an agreed upon format -- of all hourly-paid Nurses who worked for Defendants at any time during the period January 24, 2010 through the present;

(2) requiring Defendants to post the proposed Notice at all of their facilities within sixty days and to remain posted therein for a period of not less than one hundred and fifty days; and

(3) authorizing Plaintiff's counsel to send the proposed Notice to all Nurses employed by Defendants within thirty days of receipt of the above-referenced list.

<u>**CERTIFICATE OF GOOD FAITH**</u>

Pursuant to Local Rule 7.1, Plaintiff's counsel conferred with Defendants' counsel in an effort to resolve this Motion prior to its filing, but the parties were unable to resolve same.


Dated:      January 24, 2013                        Respectfully submitted,

                                                   FARUQI & FARUQI, LLP


                                                   By:     /s/ Gerald D. Wells, III
                                                           Gerald D. Wells III
                                                           101 Greenwood Ave.
                                                           Suite 600
                                                           Jenkintown, PA 19046
                                                           Telephone: (215) 277-5770
                                                           Facsimile: (215) 277-5771
                                                           Email:jwells@faruqilaw.com

                                                   BARKLEY MARTINEZ, P.C.
                                                   Richard P. Barkley
                                                   Meghan W. Martinez
                                                   720 S. Colorado Blvd, Suite 530-S
                                                   Denver, Colorado 80246
                                                   Telephone: (303) 597-4000
                                                   Facsimile: (303) 597 -4001
                                                   barkley@barmarlaw.com
                                                   martinez@barmarlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2013, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following email addresses:

avolin@sah.com
mmorrison@shermanhoward.com
pscully@shermanhoward.com

By:    /s/ Gerald D. Wells, III
         Gerald D. Wells, III