**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00653-MSK-MEH

**PATRICIA PEREZ, an individual, on behalf of herself and others similarly situated,**

     **Plaintiff,**

**v.**

**PINON MANAGEMENT, INC.;**
**PONDEROSA CARE COMMUNITIES A LLC d/b/a North Star Community, and**
**DOES 1 through 10,**

     Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
_____

     **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss

**(# 19)**, the Plaintiff's response **(# 21)**, and the Defendants' reply **(# 25)**.

## FACTS

     According to the Amended Complaint **(# 16)**, between February and September 2011,

Ms. Perez was employed as a nurse at Defendant Ponderosa Care Communities A, LLC, d/b/a

North Star Communities ("North Star")[1] a long-term health care facility operated by Defendant

Pinon Management, Inc. ("Pinon").  Ms. Perez alleges that employment polices of Pinon and/or

North Star caused employees like herself to work in excess of 40 hours per week without

_____

[1]     The Amended Complaint alleges that Ponderosa "does business as 'North Star.'"  The caption originally designated an entity called "North Star Communities" as a separate Defendant, but by all appearances, North Star is simply the name given by Ponderosa to the location where Ms. Perez worked.  The Court has therefore *sua sponte* altered the caption to reflect this situation.

receiving overtime pay, in violation of state and federal law.  Specifically, Ms. Perez alleges that the Defendants maintained a policy by which employees' time records were automatically reduced by 30 minutes each day, ostensibly to account for the employee's daily meal break.[2] Ms. Perez contends that despite treating the employees as off-duty during the meal break for compensation purposes, the Defendants "failed to ensure that work," such as responding to pages and to requests by patients, co-workers, and management, "was not being performed during employee meal breaks."  She further contends that the Defendants "knew and/or had reason to believe" that work was being performed during such unpaid break times.

The Amended Complaint asserts three claims: (i) violation of the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. § 201 *et seq.*, requirements that employees receive overtime pay for each worked hour in excess of 40 each week; (ii) a claim for "quantum meruit," presumably under state law, for instances in which employees did not work in excess of 40 hours in a week, but still performed valuable work for the Defendants during their meal periods for which they were not paid; and (iii) a claim for unjust enrichment, presumably under state law, "as an alternative to Count II," asserting essentially the same theory.  The Amended Complaint notes that Ms. Perez seeks to assert her FLSA claims as a collective action on behalf of similarly-situated employees pursuant to 29 U.S.C. § 207 and 216(b), and seeks class certification to assert her state-law claims on behalf of such employees.

The Defendants move to dismiss (**# 19**) Ms. Perez's Amended Complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule

---

[2]     The Amended Complaint alleges that this policy was nominally changed in the summer of 2011 to instead require employees to punch out at the beginning of each meal break and punch back in upon returning to work.  However, Ms. Perez contends that this new "punch out/punch in" policy was not actually enforced until sometime later.

12(b)(6).  The Defendants contend: (i) that Ms. Perez was never an employee of Pinon, and thus, any claims against that Defendant should be dismissed; (ii) that notwithstanding Mr. Perez's allegations in the Amended Complaint, the meal break policy required employees who were asked to work during their meal break to fill out a form to report such activity and receive compensation for that work time; (iii) that the punch in/punch out policy was implemented before Ms. Perez ever began working for the Defendants, and thus, she has no standing to assert claims because she was never subjected to the automatic deduction policy; (iv) that the Defendants have sent Ms. Perez a check compensating her for every shift she worked when she was not paid for a meal break, thus rendering her claims in this action moot; and (v) that the Amended Complaint fails to state a claim for various reasons.

## ANALYSIS

### A.  Standard of review

The Defendants' motion alleges that the Court lacks subject-matter jurisdiction over this action because Ms. Perez lacks standing to sue (on behalf of herself or others).

#### 1.  Rule 12(b)(1)

Challenges to subject-matter jurisdiction under Rule 12(b)(1)  generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, the Defendants' motions challenge the accuracy of Ms. Perez's allegations that she was subject to the automatic meal break policy.  Where a Rule 12(b)(1) motion challenges the underlying facts of the case, the Court may not presume the

truthfulness of the Complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and even convene a limited evidentiary hearing to resolve disputed jurisdictional facts. *Sizova v. National Institute of Standards and Technology,* 282 F.3d 1320, 1324 (10th Cir. 2002). However, such discretion does not exist where the substantive cause of action and the disputed jurisdictional facts are closely intertwined. *Id.*

   2. Rule 12(b)(6)

   In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

   A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is

4

merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51.  What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B.  Jurisdictional challenges**

1.  Mootness

The Court begins by exploring the question of whether the entire action has been rendered moot by the Defendants' offer to compensate Ms. Perez for all of her possible uncompensated time/overtime.

On April 5, 2012, North Star wrote to Ms. Perez, acknowledging receipt of her initial Complaint.  It noted aspects of its policies and disagreed with her contention that she was improperly paid.  Nevertheless, it stated "enclosed is a check in the amount of $ 1,362.45, less applicable withholdings.  We computed this amount by paying for every break you recorded, at your overtime rate."  In addition, North Star included a second for the gross amount of those wages, reflecting the liquidated damages that Ms. Perez would arguably be entitled to under 29 U.S.C. § 216(b).  North Star stated "we believe this provides you with all relief claimed in your Complaint."  The letter made no mention of costs or attorney's fees.  The record does not reflect whether Ms. Perez received or acknowledged the offer, or that she agreed or disagreed with North Star's calculation of her unpaid time, but it appears to be undisputed that she did not accept it.

Thereafter, in conjunction with their reply brief in support of their motion to dismiss, the Defendants filed, as an exhibit attached to the brief, a document entitled "Offer Of Judgment."

That document, purporting to be an offer pursuant to Fed. R. Civ. P. 68, proposed to permit Ms. Perez to take judgment against the Defendants in the amount of $ 1,363, "in addition [to] any other relief to which [she] would be entitled, including an additional equal amount as liquidated damages, costs, and a reasonable attorney's fee."  The offer, by its terms, expired 14 days later and, by all appearances, was rejected by Ms. Perez.

The question presented is whether the Defendants' offer to pay Ms. Perez all of the monetary damages she can recover in this action is sufficient to render her individual claims moot, and, further, to prevent her from continuing to purport to represent a class or collective of other employees.  Although the Court has some doubt that North Star's initial letter proposed to grant Ms. Perez all of the relief she sought (insofar as it made no mention of attorney's fees or costs, both of which are available to prevailing FLSA plaintiffs, 29 U.S.C. § 216(b)), the Court will assume (without necessarily finding) that the more expansive language of the Defendants' Offer of Judgment is sufficient to do so.[3]

The 10th Circuit has recently addressed the question of "whether a class-action complaint must be dismissed for mootness upon the tender of a [Rule 68] offer of judgment for the full amount of the individual Plaintiff's monetary claim in the absence of undue delay in filing a motion for class certification," and concluded that dismissal on mootness grounds is not appropriate.  *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1240 (10th Cir. 2011).  This Court will not recapitulate the thorough and well-reasoned analysis of *Lucero*, except in specific respects.  Suffice it to say that although the court recognized the general

---

[3]     Ms. Perez has not stated whether she believes North Star's calculations as to all possible house she could claim under the FLSA is correct or not.  For purposes of this discussion, the Court will assume that it is.

principle that tendering the full amount of a plaintiff's potential recovery is sufficient to render

the claim moot, there are practical obstacles to applying that rule in putative class actions, as

exemplified in a passage from the Supreme Court's decision in *Deposit Guaranty National Bank*

*v. Roper*, 445 U.S. 326, 339 (1980):

> [r]equiring multiple plaintiffs to bring separate actions, which
> effectively could be "picked off" by a defendant's tender of
> judgment before an affirmative ruling on class certification could
> be obtained, obviously would frustrate the objectives of class
> actions; moreover it would invite waste of judicial resources by
> stimulating successive suits brought by others claiming
> aggrievement.

*Lucero*, 639 F.3d at 1243, 1250.  Thus, *Lucero* held that "a named plaintiff in a proposed class

action for monetary relief may proceed to seek timely class certification where an unaccepted

offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court

can reasonably be expected to rule on the class certification motion [or where the time set by the

court for filing such motion has not yet passed]."  639 F.3d at 1250.

On its face, *Lucero* would seem to dispose of the Defendants' contention that their offer

to Ms. Perez moots out both her own individual claims and any putative class or collective

claims she purports to assert.[4]   The Defendants attempt to distinguish *Lucero* in various ways,

but the Court finds only one of those arguments sufficiently colorable to warrant comment.

*Lucero* expressly states that its analysis "do[es] not decide the impact of a Rule 68 offer of

judgment made in a collective, or 'opt-in' action." Collective actions under the FLSA are indeed

---

[4]      It is undisputed that the Scheduling Order (**# 24**) expressly provided for Ms. Perez to file
a motion for class certification, and she has filed such a motion within that deadline.

"opt-in." 29 U.S.C. § 216(b).[5]  Thus, this Court must consider whether the logic underlying

*Lucero*'s rule is applicable to opt-in collective actions as well.

Collective actions under the FLSA differ from the more conventional Rule 23 class

action, like those considered in *Lucero*, insofar as approval of a class does not necessarily ensure

that additional aggrieved parties will be joined in the suit.  Whereas Rule 23 certification of a

class makes all aggrieved persons parties to the suit unless they actively seek to exclude

themselves, certification of a collective action under the FLSA requires aggrieved employees to

take affirmative action by filing a formal consent to become a party.  29 U.S.C. § 216(b).  Thus,

if certification acts like an invitation to a party, the Rule 23 invitee's attendance is assumed

unless he or she expressly RSVPs with regrets, but in an FLSA action, the invitee's silence

(whether purposeful or via sheer inaction) is assumed to be a declination of the invitation.  Any

wedding planner would acknowledge that the former assumption will lead to a larger guest list

than the latter.  Thus, there is a certain logic in *Lucero*'s reticence to extend its rule to opt-in

collective actions..

Nevertheless, this Court concludes that, if pressed to consider whether *Lucero*'s rule

should extent to opt-in actions, the 10th Circuit would reach the same outcome for largely the

same reasons.  Most significantly, *Lucero*'s logic does not make any particular assumptions

about the size of any putative class.  Indeed, *Lucero* does not even require that a class

certification motion be filed or pending at the time an offer of judgment is made.  It may be that

---

[5]      "An action to recover the liability prescribed in [the FLSA] may be maintained against
any employer . . . by any one or more employees for and in behalf of himself or themselves and
other employees similarly situated. No employee shall be a party plaintiff to any such action
unless he gives his consent in writing to become such a party and such consent is filed in the
court in which such action is brought."

the contours of the putative class are shifting or uncertain, but it is enough that the plaintiff's pleading gives merely a hint that such a class may be sought in the future.  639 F.3d at 1250 ("any Article III interest a class may or may not have in a case is . . . present from its inception"). If the size or composition of the class that may ultimately be certified has no bearing on the question of mootness, then there is little reason to distinguish between an opt-in class or an opt-out one at this stage of the litigation.  An opt-in class in an FLSA action is likely to be smaller than an opt-out class in a Rule 23 proceeding, but so long as the party has guests, the mootness issue is avoided.[6]

Moreover, it appears to this Court that the clear trend of authority favors extending the *Lucero* rule to opt-in collective actions.  In expressly reserving that question for a future case, the court in *Lucero* cited to two authorities: *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 920 (5th Cir. 2008), and *Darboe v. Goodwill Industries*, 485 F.Supp.2d 221, 223-24 (E.D.N.Y. 2007). Both cited cases involve courts examining the question of mootness in the specific context of Rule 68 offers on "opt-in" collective actions under the FLSA, but reach opposite outcomes, with *Darboe* finding the action moot and *Sandoz* finding no basis for dismissal on mootness grounds. However, this Court observes several facts that suggest that the *Darboe* line of authority would not be adopted.

First, the Court notes that *Darboe* does not present the issue squarely.  There, the case had been pending for more than a year before the offer of judgment was made and the plaintiff had not yet moved for certification of a collective action nor identified any other putative class

---

[6]     Taking *Lucero* to its logical extreme, if the putative FLSA collective action plaintiff is unable to get <u>any</u> co-workers to accept her invitation to join the lawsuit, the employer can still render the action moot by (re-)making the offer of judgment to the employee, alone.

member.  485 F.Supp.2d at 222, 224.  Interestingly, the same judge that decided *Darboe* addressed the same question in a subsequent case and reached a different result.  In *Velasquez v. Digital Page, Inc.*, 842 F.Supp.2d 486, 488 (E.D.N.Y. 2012), the court refused to deem a putative FLSA collective action moot simply because the employer had made a full Rule 68 offer to the named plaintiffs.[7]  The court explained that "courts are wary of attempts by defendants to evade FLSA collective actions by making Rule 68 offers of judgment at the earliest possible time," and found that less than two months had expired from the commencement of the action, the plaintiffs had already filed a motion for conditional certification, and an additional employee had formally opted into the action.  *Id.* at 488-89.  It therefore concluded that dismissal of the individual or putative collective claims on mootness grounds was inappropriate.

Thus, if the *Lucero* rule were extended to opt-in actions, a case like *Darboe* would still fall outside of it.  An essential requirement of *Lucero* is that the putative class plaintiff is moving expeditiously to seek class certification; where the plaintiff has been dilatory in seeking such relief, *Lucero* readily recognizes that dismissal on mootness grounds may be appropriate.  639 F.3d at 1248-49 ("where the plaintiff has had ample time to file the class certification motion, district courts adhere to the general rule that the mooting of a named plaintiff's claim prior to class certification moots the entire case"), *quoting Clark v. State Farm Mut. Auto Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009).  *Darboe,* and several of the cases it relies upon, involve just such a dilatory plaintiff.  *Darboe*, 485 F.Supp.2d at 222 (no class certification motion after more than a year); *Ward v. Bank of New York*, 455 F.Supp.2d 262, 270 (S.D.N.Y. 2006) (unclear whether certification motion filed, but more than a year passed without any indication of other

---

[7]     Both *Darboe* and *Velasquez* note that the Second Circuit has not yet addressed the question.

employees opting in); *see also Briggs v. Arthur T. Mott Real Estate, LLC*, 2006 WL 3314624 (E.D.N.Y. Nov. 14, 2006) (slip op.) (employer made offer of judgment within 1 month of action being commenced but, by all appearances, employee had not sought class certification as of the time of the opinion, some 8 months later). *Accord Bowens v. Atlantic Maintenance Corp.*, 546 F.Supp.2d 55, 79 (E.D.N.Y. 2008) (noting that the aforementioned decisions "suggest that those courts relied on the fact that no motion for collective action was pending and that no other plaintiffs had opted-in to the action in granting the defendants' motions to dismiss"). By contrast, where the plaintiff has moved expeditiously to seek certification, as the employee in *Velasquez* did, the result is more in line with *Lucero*. *See Sandoz*, 553 F.3d at 921 ("courts have found that there must be some time for a plaintiff to move to certify a collective action before a defendant can moot the claim through an offer of judgment").

Accordingly, this Court concludes that, if called upon to address whether the rule in *Lucero* applies to opt-in collective actions, such as those under the FLSA, the 10th Circuit is likely to conclude that it does. Therefore, this Court concludes that because Ms. Perez has diligently filed a motion seeking certification of a class in this action, the Defendants may not, at this time, obtain dismissal of her putative representative claims on mootness grounds via an offer of judgment under Rule 68.

2.  Employer status and application of policy

The Defendants also argue that Ms. Perez lacks standing to sue Pinon, on the grounds that it was not her employer, and that her claims should be dismissed for lack of standing on the grounds that the automatic deduction policy never applied to her.

The Court has carefully examined the Defendants' arguments on these points and concludes that dismissal for lack of standing is inappropriate at this early stage of the litigation. As noted above, where a defendant challenges the sufficiency of a plaintiff's invocation of subject-matter jurisdiction or standing by disputing the accuracy of the underlying facts, the Court has the authority to resolve those factual disputes for purposes of assuring itself of its jurisdiction, but it may not do so where the disputed facts are inextricably bound up in the substantive cause of action. *Sizova*, 282 F.3d at 1324. In such circumstances, the Court should instead analyze the issue under Rule 12(b)(6) or on summary judgment. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987).

Here, questions of whether Pinon is Ms. Perez's employer and questions of whether she was subject to a particular policy are closely tied to the underlying substantive question of whether the Defendants violated the FLSA. Proof of employer status and operation of a policy that resulted in her receiving less than her statutorily-guaranteed compensation are elements of her substantive claim, not standalone jurisdictional questions that can be resolved without addressing her underlying substantive claim. *See e.g. Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir. 1986) (question of whether defendant was "employer" of plaintiff was intertwined with substantive claim and not suitable for resolution under Rule 12(b)(1)). As discussed below, the Court finds that Ms. Perez's allegations on these points are sufficiently colorable that they survive scrutiny under Fed. R. Civ. P. 12(b)(6). Whether Ms. Perez can, for example, adduce evidence sufficient to meet the fairly demanding requirements to disregard corporate formalities and treat Pinon as a joint employer with North Star are issues that must await summary judgment for resolution.

Accordingly, the Defendants' motion to dismiss Ms. Perez's claims under Rule 12(b)(1) is denied.

### C.  Sufficiency of pleading

The Court then turns to the Defendants' contentions that Ms. Perez's Amended Complaint fails to state a cause of action for a variety of reasons.

To prove a claim for violation of the FLSA's overtime pay requirements, Ms. Perez must allege: (i) that the Defendant is an employer as defined by the Act; (ii) that she is an employee as defined by the Act; (iii) that the Defendant employed her services; (iv) for more than 40 hours in a single work week; and (v) that she did not receive compensation at a rate of 1.5 times her normal hourly rate for the hours she worked over 40 in that week.  29 U.S.C. § 207(a)(1); *Figueroa v. District of Columbia Metropolitan Police Dept.*, 633 F.3d 1129, 1134-35 (D.C. Cir. 2011) (characterizing essential elements as "that [employee] has performed work for which he was improperly compensated").

#### 1.  Employer status

The Defendants argue that Ms. Perez has failed to adequately allege that either of the Defendants were her "employer."  The FLSA defines "employer," somewhat circularly, as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d).

As to North Star, Ms. Perez alleges that it operates a long-term care facility, *Amended Complaint* ¶ 21, and that she was a nurse employed by it, ¶ 31.  She further points to a document entitled "Employee Handbook" that she was given at the start of her time with North Star, and that document expressly identifies North Star on its cover.  Although the Defendants might

13

legitimately contend that the Amended Complaint is not a model of clarity, any reasonable reading of it readily permits a conclusion that Ms. Perez has adequately alleged that North Star was her employer.

Ms. Perez also alleges that Pinon also served as her employer.  She alleges that Pinon and North Star "share common management and have common ownership," ¶ 24; that "these entities operate under a set of common human resources policies," ¶ 25;  that the meal break policy in question "was proffered by Pinon," ¶ 26; and that Pinon "maintain[s] uniform employment policies and guidelines at each of their facilities" including North Star, ¶ 27.   From these facts, Ms. Perez concludes that Pinion and North Star "are the employer – single, joint, or otherwise" of her, ¶ 28.

In regulations implementing the FLSA, the Department of Labor expressly contemplates that "a single individual may stand in the relation of an employee to two or more employers at the same time," and provides some discussion of how to determine "whether the employment . . . is to be considered joint employment or separate and distinct employment."[8]  29 C.F.R. § 791.2(a).  Joint employment may exist "where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee directly or indirectly by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 791.2(b)(3).  In *Zachary*

---

[8]     Arguably, this provision is more applicable to circumstances in which an employee seeks to aggregate work hours performed at two separate workplaces for overtime purposes, *e.g.* if Ms. Perez worked some hours at North Star and other hours at the Pinon offices.  It may be more accurate to characterize Ms. Perez's contentions that Pinon is her employer under an "enterprise" theory under 29 U.S.C. § 203(r), or via some other legal theory.  The Court expects that Ms. Perez will fully identify and support her theory of joint employment at the summary judgment stage.

*v. Rescare Oklahoma, Inc.*, 471 F.Supp.2d 1175, 1179-82 (N.D. Ok. 2006), the court considered the "joint employment" question in the context of corporate parent-subsidiary relationships by examining which entity: (i) had the power to hire and fire; (ii) supervised and controlled work schedules and conditions of employment; (iii) determined the rate and method of pay; and (iv) maintained employment records.

Taking the allegations in the Amended Complaint in the light most favorable to Ms. Perez, she has alleged that Pinon "controls" North Star to the extent that North Star is "not completely disassociated" from it, and thus both entities collectively serve as her "employer." Alternatively, the Court understands her to allege that Pinon, not North Star, determines employment policies governing work schedules and pay, and that Pinon maintains employment records and documentation for North Star. Under these circumstances, the Court finds that Ms. Perez has adequately alleged that Pinon is her employer, individually or jointly with North Star. The question of whether Ms. Perez can ultimately demonstrate facts sufficient to support that contention is a question to be resolved at a later time.

2. meal break policies

The Defendants contend that meal break policies of the type alleged here are, as a matter of law, permissible under the FLSA. However, the bulk of this portion of the Defendants' argument is directed at a contention that claims premised on such policies present individualized issues not suitable for resolution via a collective action. Because the question of whether Ms. Perez may ultimately be permitted to assert her claims on behalf of a class is not one that is properly before the Court at this time, the Court need not consider that aspect of the Defendants' argument.

15

The Defendants' contention that "recent court decisions have noted that [the automatic meal break deduction] policy is . . . lawful" is based on two decisions, *Wollman v. Catholic Health System of Long Island*, 2012 WL 566255 (E.D.N.Y. Feb. 16, 2012) (slip op.), and *Manning v. Boston Medical Center Corp.*, 2012 WL 1355673 (D.Ma. ____, 2012) (slip op.). Neither case stands for the proposition that the Defendants appear to assert: that automatic deductions for meal breaks are, as a matter of law, permissible, even though the employee nevertheless is required to work during some or all of that break period.

For example, *Wollman* acknowledges that "meal periods are compensable under the FLSA when employees during a meal break perform duties predominantly for the benefit of the employer." *Id.* at *9. It goes on to observe that employees whose breaks are interrupted with work duties for only insubstantial periods of time might not be able to state a claim, and concludes that the employee's pleading in that action insufficiently alleged <u>facts</u> showing "the nature and frequency of these interruptions . . . or how often meal breaks were missed altogether." *Accord Manning*, 2012 WL 1355673 at *5-6 (acknowledging that "an employee must be 'completely relieved from duty' during his or her bona fide meal period, and 'is not relieved if he is *required* to perform any duties, whether *active or inactive, while eating*,'" but finding that employee's pleading was insufficiently conclusory as to the nature and extent of requests made of them during meal periods). Here, the Court is satisfied that the Amended Complaint gives the Defendants sufficient notice of Ms. Perez's contention that she was "routinely," ¶ 36, 40, "consistently," ¶ 41, and "often," ¶ 42, required to take her meal breaks "without any change in demands" upon her, ¶ 42, and that she was "required to respond to pages, as well as requests by patients, co-workers, and management" during such breaks, ¶ 42, and that

16

she was prohibited from leaving her duty station during such breaks, ¶ 43.  Under these

circumstances, the Court finds that Ms. Perez has sufficiently alleged a cognizable FLSA claim.

The Defendants make an additional argument limited to a single sentence.  They state

that Ms. Perez's claim "fails because [she] was never subject to the automatic deduction policy

herself."  The argument appears to address allegations that the Defendants <u>think</u> should be set

forth in the Amended Complaint, rather than the allegations actually made.  The Amended

Complaint unambiguously states that "Plaintiff was subject to Defendants' [automatic] meal

break deduction policy," ¶ 35.  As stated above, the Court assesses a Rule 12(b)(6) motion by

examining the face of the complaint; disputes as to the accuracy of substantive factual allegations

are matters to be taken up on summary judgment.

3.   <u>timeliness</u>

The Defendants contend that Ms. Perez's claims are untimely under the FLSA's two-year

statute of limitations.  29 U.S.C. § 255.  It is apparent that Ms. Perez's original complaint was

filed in March 2012 within two years of her exposure to the meal break policy in 2011.

4.   <u>remaining arguments</u>

The Defendants offer several additional arguments in favor of dismissal, but these

arguments—that state nursing regulations do not give rise to a cause of action, that the Amended

Complaint "do[es] not sufficiently allege that Plaintiff worked time for which she was not paid,"

etc. – are either irrelevant to the Rule 12(b)(6) analysis or facially without merit.

5.   <u>state law claims</u>

Finally, the Defendants argue that Ms. Perez's state law unjust enrichment/quantum meruit claims fail to state a cause of action because the parties have a pre-existing agreement as to how Ms. Perez's work will be compensated. The Court finds merit in that contention.

Under Colorado law, the concepts of "unjust enrichment" and "quantum meruit" are essentially interchangeable; they exist as equitable theories of recovery arising out of "the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered." *Melat, Pressman & Higbie, LLP v. Hannon Law Firm, LLC*, 287 P.3d 842, 847 (Colo. 2012). Thus, the claim(s) cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid (absent an allegation that the agreement is invalid or unenforceable, neither of which is alleged here). *Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010) ("a claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay"); *Berra v. Springer & Steinberg, PC*, 251 P.3d 567, 570 (Colo. App. 2010) (claim may lie where contract is invalid or unenforceable).

Here, Ms. Perez's Amended Complaint expressly states that "a contractual relationship existed between [herself] and Defendants wherein Defendants agreed to pay [her] for all hours worked," ¶ 82. To the extent Ms. Perez alleges that the Defendants are in breach of that "contractual relationship," her relief is via a breach of contract claim, not through the equitable doctrine of unjust enrichment/quantum meruit. Accordingly, the Court dismisses her state law claims for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (**# 19**) is **GRANTED IN PART**, insofar as the Court dismisses Ms. Perez's claims for unjust enrichment and quantum meruit for failure to state a claim, and **DENIED IN PART**, insofar as the Court finds that her FLSA claim may proceed.  The Clerk of the Court shall note the modification of the caption of this case as set forth above, including the termination of North Star Communities as a separate Defendant.

Dated this 19th day of March, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge