IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00653-RM-MEH

PATRICIA PEREZ, an individual, on behalf of herself and others similarly situated,

      Plaintiff,

v.

PINON MANAGEMENT, INC., and
PONDEROSA CARE COMMUNITIES A LLC,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendants' Motion for Summary Judgment [filed February 25, 2013; docket #41]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the Motion has been referred to this Court for recommendation. (Dockets ##44, 66.) The matter is fully briefed, including a surreply and various supplements. In addition to the briefs, the Court heard oral argument on May 21, 2013. Upon consideration of the entire record, the Court finds that Plaintiff's claims are not justiciable and recommends dismissal for lack of subject matter jurisdiction. Alternatively, the Court finds that Plaintiff has provided insufficient evidence of her FLSA claim to withstand summary judgment. In either case, the Court respectfully recommends that the Defendants' Motion be **GRANTED** as stated herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States*

# BACKGROUND

## I.      Findings of Fact[2]

Plaintiff worked as a registered nurse between February and September 2011 at Defendant Ponderosa Care Communities A LLC d/b/a North Star Community ("North Star").  (Docket #16, ¶ 17.)  North Star is an long-term residential care facility which provides medical services for up to 85 residents at a given time.  (*Id*. at ¶ 21.)  Pinion Management, Inc. ("Pinion") provides management and consulting services to owners, managers, and developers of long-term care facilities, including North Star.  (*Id*. at ¶ 19.)

For the first few months of Plaintiff's employment with North Star, North Star automatically deducted 30 minutes from her time records to account for an unpaid meal break during each shift. (Docket #41-5, 8-9.)  Sometime thereafter, North Star changed its policy to require all employees to clock out at the beginning of their meal breaks and to clock in after their meal breaks concluded. (*Id*. at 9.)  Plaintiff understood that 30-minute meal breaks were mandatory and that she was to record all of her work hours using the time clock.  (*Id*.)  Pursuant to the North Star Break Policy Plaintiff signed on February 1, 2011, Plaintiff understood that if she was unable to take a break, she must write it down on a missed punch sheet and obtain a supervisor's initials for approval.  (Docket

---

*v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]Because Chief Judge Krieger's Civil Practice Standards do not require the parties to provide a separate statement of facts, the Court's findings of fact are based on those asserted in Motion and supported by the record. All findings of fact set forth in this section are either undisputed or taken in the light most favorable to Plaintiff, the non-moving party.

#41-16, 7.)

During her employment, Plaintiff frequently worked as the night shift house supervisor.  In this role, Plaintiff was scheduled to work from 6:00 p.m. through 6:30 a.m. with a 30 minute break. (Docket #41-5 at 14.)  Though there were other nurses on duty during Plaintiff's night shifts, she claims that she could not take lunch breaks because "there was nobody else to answer the phone and make sure patients were okay" and because "there was nowhere to go."  (*Id.* at 17.)  Plaintiff admits that the North Star facility had a designated break room available to Plaintiff during the night shift; however, Plaintiff described the break room as "very, very scary" and refused to use it even "for a million dollars."  (*Id.*)

Plaintiff had approximately three conversations with Patricia Johnson regarding her meal breaks.  (Docket #41-5 at 10-11.)  During one of the conversations, Plaintiff and Ms. Johnson discussed Plaintiff's failure to use the time clock system for documenting her lunch breaks.  (*Id.* at 10.)  As a result of repeated failures of this kind, Plaintiff was written up for filling out missed punch forms instead of using the time clock.  (*Id.*)  Plaintiff told Ms. Johnson that she "generally did not take time off for lunch; [that] she stay[ed] at her desk for the entire 12 [and] ½ hours or more."  (*Id.*) Though Plaintiff recalls her supervisor, Kevin Baxter, being present for the counseling, she cannot recall if she ever talked to Mr. Baxter about working off the clock.  (*Id.* at 10-11.)  The only thing Plaintiff can recall about her conversation with Mr. Baxter is that Plaintiff "was required to punch out and not use a missed punch form."  (*Id.* at 11.)  Plaintiff submitted no written complaints about her pay or working through lunch while employed by North Star.  (*Id.*)

According to a summary of Plaintiff's employment records, Plaintiff did not report a lunch break for at least 17 different shifts.  (Docket #41-10.)  Plaintiff's payroll records show that Plaintiff received credit and payment for this time. (Docket #41-9.)  Plaintiff reported partial breaks ranging

from 7 minutes to 28 minutes for at least 24 different shifts.  (Docket #41-10.)  Like the occasions on which Plaintiff took no meal break, Plaintiff's payroll records show that Plaintiff received credit and payment for time she reported working during partial breaks.  (Docket #41-9.)  Plaintiff documented breaks by clocking out and in and by submitting missed punch forms.  (Docket #41-10.)  As shown in Plaintiff's employment records, Plaintiff submitted missed punch forms to document either full or partial breaks on at least 38 occasions.  (*Id.*)  Plaintiff's payroll records show that Plaintiff received credit and payment for this time.  (Docket #41-9.)

During her deposition, counsel for the Defendants presented Plaintiff with her employment records and asked Plaintiff to identify for each shift whether the records were accurate.  For the vast majority of shifts, Plaintiff could "neither confirm nor deny" whether she worked more time than the records indicated. (Docket #41-5 at 20-32; docket #41-6, 1-16.)  Plaintiff disputed the records of shifts she worked on February 16, 2011, and April 18, 2011.  (Docket #41-5 at 24; docket #41-6 at 4.)  Plaintiff's records for the February 16, 2011 shift show that she worked 8 hours and took a 30-minute meal break.  (Docket #41-10 at 2.)  During her deposition, Plaintiff testified that she actually worked "at least 8½ hours" that day; however, Plaintiff could not recall whether she incurred the additional 30 minutes as a result of missing her meal break or as a result of working past her shift.  (Docket #41-5 at 24-25.)  According to Plaintiff's payroll records, Plaintiff worked a total of 33.2 hours during the week of February 16, 2011.  (Docket #41-9 at 3.)

With respect to the April 18, 2011 shift, Plaintiff's records reflect 12.75 hours of work and a 22-minute meal break.  (Docket #41-10 at 4.)  When asked to confirm the accuracy of these records at her deposition, Plaintiff claimed she did not take a meal break during that shift because it fell during a busy time.  (Docket #41-6 at 4.)  During the week of April 18, 2011, Plaintiff's payroll records indicate that Plaintiff worked a total of 25.38 hours.  (Docket #41-9 at 7.)

After a shift-by-shift inquiry regarding the accuracy of Plaintiff's employment records, counsel for Defendants asked Plaintiff to provide a broader estimate of the alleged payment deficiency. Plaintiff testified that she had no "sense on an overall basis how much time [she] worked but was not paid for." (Docket #41-6 at 21.)  Similarly, Plaintiff could not provide any estimate of "how much time [she] believed [she] worked but [wasn't] paid for[.]" (*Id.*)  Plaintiff has no records she could use to help her determine the amount of uncompensated work she performed.  (*Id.*)

Plaintiff has refused to provide any estimate of her monetary damages. (*Id.* at 26) ("Q: How much money do you believe you are owed for work that you performed for which you were not compensated? ... A: I don't think the issue is dollars.  I can't answer you.").  In light of her belief that "the issue is [not] dollars," Plaintiff declined to accept a check from North Star as compensation for every break Plaintiff recorded at Plaintiff's overtime rate, plus liquidated damages. (*Id.* at 24-26; docket #41-2, 2-3.)  Plaintiff refused to comment on the adequacy of the offered amount or to provide her own calculation of sufficient compensation.  (Docket #41-6 at 25-26.)

Pursuant to North Star's overtime policy, Plaintiff received overtime compensation at a rate of 1.5 times her regular hourly rate for (1) all hours worked in excess of 12 per shift; and (2) all hours worked in excess of 40 per week.  (Docket #41-14, 4.)  During the entirety of her tenure with North Star, Plaintiff was paid overtime compensation for 155.37 hours of work.  (*Id.*; docket #41-9.) Of this total, Plaintiff earned only 123.9 hours of overtime compensation by working in excess of 40 hours per week.  (*Id.*)  Plaintiff earned the remaining 31.47 hours of overtime pay for working in excess of 12 hours per shift.  (Docket #41-14 at 5.)  Had Plaintiff worked through every lunch break during every shift she worked, she would have earned a total of 136.35 hours of overtime compensation for hours worked in excess of 40 per week.  (*Id.*)  On five occasions, Plaintiff received overtime compensation for exceeding 12 hours per day on days where she submitted a missed punch

form claiming she had taken a break. (*Id*. at 6-7.) Thus, Plaintiff was paid for 2.5 hours of time she reported taking a break. (*Id*. at 7.)

## II.    Procedural History

Plaintiff filed her Class and Collective Action Complaint under the Fair Labor Standards Act ("FLSA") on March 14, 2012, on behalf of herself and others similarly situated. (Docket #1.)  In response, Defendants moved for dismissal. (Docket #11.)  Within the time period provided by Fed. R. Civ. P. 15(a)(1)(B), Plaintiff filed her First Amended Class and Collective Action Complaint (the "First Amended Complaint") on April 30, 2012, thereby mooting Defendants' motion. (*See* docket #17.)  Plaintiff's First Amended Complaint asserts three causes of action: (1) FLSA Overtime Violation based on Defendants' "fail[ure] to ensure that employees were not performing compensable work during their meal breaks. . ."; (2) Quantum Meruit based on Defendants' unlawful receipt of Plaintiff's labor without tendering appropriate compensation; and (3) Unjust Enrichment based on Plaintiff's performance of uncompensated work. (Docket #16 at 14-16.)  As relief, Plaintiff seeks statutory damages, a declaration that Defendants have violated the law, reasonable attorney's fees and costs,  various orders designating the action as a collective and/or class action, and the appointment of Plaintiff and her counsel to represent individuals opting in to the collective action and/or members of the state class action. (*Id*.)

Defendants renewed their Motion to Dismiss on May 7, 2012, seeking to dismiss the First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Docket #19.)  With regard to subject matter jurisdiction, Defendants argued that Plaintiff's FLSA claim was moot because Defendants had offered to pay Plaintiff the entirety of her asserted damages, thereby eliminating any case or controversy.  Under Rule 12(b)(6), Defendants disputed the sufficiency of Plaintiff's FLSA and state law claims and argued that Pinion could not be held liable under the

FLSA because it was not Plaintiff's employer.  With their reply in support of the Motion to Dismiss, Defendants filed a Rule 68 Offer of Judgment ("Defendants' Offer of Judgment") dated June 15, 2013.  (Docket #25-1.)

During the pendency of the Motion to Dismiss, the Court entered a Scheduling Order on June 13, 2012, establishing the Phase I discovery schedule.  At Plaintiff's request, the Court amended the discovery schedule on November 19, 2012, by extending  the deadline for Plaintiff's motion for conditional certification through and including January 24, 2013, and modifying the briefing schedule accordingly.  (Docket #37.)  Plaintiff complied with the revised deadline and filed a Motion for Certification on January 24, 2013.  On the deadline for their response brief, Defendants filed the pending Motion for Summary Judgment.  (Docket #41.)  Chief Judge Krieger referred the Motion for Summary Judgment to this Court for recommendation.  (Docket #43.)

Recognizing the effect of summary judgment on Plaintiff's Motion for Certification, the parties filed a Motion to Stay on February 25, 2013.  Specifically, the parties asked the Court to impose a temporary stay of Plaintiff's Motion for Certification, including briefing, until the District Court resolved the Motion to Dismiss and Motion for Summary Judgment.  In its March 1, 2013 Order on the Motion to Stay, the Court agreed with the parties that efficiency and economy would be served by not reaching the issue of certification until the District Court had determined the validity of Plaintiff's claims.  (Docket #44, 3.)  However, the Court observed that the Motion for Summary Judgment could take considerably longer to resolve insofar as  the parties would likely file objections necessitating further briefing and review.  (*Id*.)  In order to avoid the extensive delay in resolving the Motion for Certification, the Court determined it would be best to deny the Motion for Certification without prejudice as premature.  (*Id*. at 4.)  In light of this finding, the Court amended the Phase I discovery schedule to extend the deadline to re-file the motion through and

including June 3, 2013.  (*Id.*)  The Court indicated it would consider a motion to extend the deadline in the event the dispositive motions were not resolved by that date.  (*Id.*) Given Plaintiff's interest in preserving the claims of putative class members, the Court found that any other deadlines applicable to any and all causes of action or claims at issue in this lawsuit should be tolled from the date of this order until the stay is lifted.  (*Id.*)  The Court determined that the stay would expire 30 days after Chief Judge Krieger issued a ruling on the Motion for Summary Judgment.  (*Id.*)

On March 19, 2013, Chief Judge Krieger entered an Opinion and Order on Defendants' Motion to Dismiss.  (Docket #48.)  Chief Judge Krieger granted the Motion to Dismiss in part, finding that Plaintiff had failed to state a claim under either a Quantum Meruit or Unjust Enrichment theory of recovery.  (*Id.* at 18.)  However, she declined to dismiss Plaintiff's claim for FLSA overtime or to find the action moot.  With respect to the latter argument, Chief Judge Krieger found (as set forth more fully below) that Defendants' Offer of Judgment affording complete relief to Plaintiff did not moot the action because of Plaintiff's collective action allegations.  In so finding, Chief Judge Krieger cited the Tenth Circuit's decision in *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011).  Though *Lucero* pertained to class actions and explicitly declined to reach the issue of FLSA opt-in collective actions, Chief Judge Krieger determined that "if called upon to address whether the rule in *Lucero* applies to opt-in collective actions ... the 10th Circuit is likely to conclude that it does." (Docket #48, 11.)  After entering her order, Chief Judge Krieger reassigned the case to Judge Raymond Moore.  (Docket #51.)

On April 16, 2013, approximately a month after Chief Judge Krieger's order, the Supreme Court issued a decision in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) holding that "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." In light of *Symczyk*, Defendants renewed their

mootness argument in their reply brief. Because Plaintiff filed her response before the *Symczyk* decision , the Court ordered Plaintiff to file a surreply addressing the effect of *Symczyk* on the justiciability of her remaining claim.   The Court postponed oral argument by a week to accommodate and consider the additional briefing.

The Court heard oral argument on the pending Motion for Summary Judgment on May 21, 2013.   (Docket #61.)  In addressing Plaintiff's surreply, Defendants cited a number of authorities that Defendants believed supported dismissal for lack of subject matter jurisdiction.   The Court ordered Defendants to file a list of these authorities on or before May 23, 2013.  Plaintiff requested and received leave to respond to Defendants' supplement no later than May 28, 2013. Defendants and Plaintiff have submitted their supplements, accordingly.  (Dockets ##62, 64.)

## LEGAL STANDARDS

### I.   Dismissal for Lack of Subject Matter Jurisdiction

A litigant may challenge subject matter jurisdiction "at any time in the same civil action." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).  Federal courts are likewise responsible for assessing the validity of subject matter jurisdiction at each stage of the litigation.  *Id.*  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the could shall dismiss the action."  *Id.* (citing Fed. R. Civ. P. 12(h)(3)); *see also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (noting that a court "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear her claims.

### II.   Summary Judgment Standard

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and ... if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically

require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## DISCUSSION

Defendants' Motion attacks both the merits and justiciability of Plaintiff's FLSA claim. Because the latter argument effectively challenges the District Court's subject matter jurisdiction, the Court will begin its analysis by determining whether Plaintiff's claims are moot in light of the Defendants' Offer of Judgment. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Lucero*, 639 F.3d at 1242 ("Like Article III standing, mootness is oft-cited as a constitutional limitation on federal court jurisdiction."). Thereafter, the Court will consider whether Defendants are entitled to summary judgment.

## I.      Justiciability

As its name suggests, Article III's "case or controversy" requirement "restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Symczyk*, 133 S. Ct. at 1528 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982)). In order to avail herself of a federal court's jurisdiction, a plaintiff must demonstrate "a legally cognizable interest" or a "personal stake" in the outcome of an action. *Id*. This burden persists throughout the life of her case, including appellate review. *Id*. "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit' at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Id*. (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

The Supreme Court has historically recognized two exceptions to the mootness rule. The first exception applies where a party's claims are "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). The second exception, known as the "voluntary cessation exception," allows courts to hear cases in which a defendant who has ceased the challenged activity during the litigation is likely to resume the activity once the litigation has concluded. *United States v. W.T. Grant Co*, 345 U.S. 629, 632 (1953). Plaintiff does not assert, nor does the Court find, that either exception is applicable under the circumstances. Thus, the Court is tasked with determining whether the general doctrine, as applied to these facts, renders Plaintiff's FLSA claim moot.

Given the usual development of the case law over the course of the briefing, the Court will begin its jurisdictional analysis by recounting the state of law at the time of Chief Judge Krieger's order on Defendants' Motion to Dismiss. Thereafter, the Court will consider how, if at all, the Supreme Court's decision in *Symczyk* affects her conclusion. Finally, the Court will address the applicability of *Symczyk* to this action, and ultimately, whether Defendants' Rule 68 Offer of Judgment renders this action moot.

A.   *Lucero*

In addressing the issue of mootness initially, Chief Judge Krieger relied extensively on the Tenth Circuit's decision in *Lucero*. As characterized by Chief Judge Krieger, the *Lucero* court "recognized the general principle that tendering the full amount of a plaintiff's potential recovery is sufficient to render the claim moot. . ." (*See* docket #48 at 7.); *Lucero*, 639 F.3d at 1243 ("As Rule 68 operates, if an offer is made for a plaintiff's maximum recovery, his action may be rendered moot."). Though the Tenth Circuit had "yet to address the question squarely," it noted that "other circuits have concluded that if a defendant makes an offer of judgment in complete satisfaction of

a plaintiff's claims in a *non-class action*, the plaintiff's claims are rendered moot because he lacks a remaining interest in the outcome of the case." *Id*. (citing *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 915 (5th Cir. 2008) and *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)). However, the Tenth Circuit expressed reservations about applying this general principle in the context of proposed class actions. *Id*.

Although the *Lucero* court "acknowledge[d] some tension" among the legal concepts at play in its decision, it ultimately concluded that "a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion." *Id*. at 1249-50. In resolving the tension, the *Lucero* court rested predominately on the mootness jurisprudence developed in *Sosna v. Iowa*, 419 U.S. 393 (1975), *Gerstein v. Pugh*, 420 U.S. 103 (1975), *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), and *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980). *Id*. Citing *Geraghty* for the proposition that "the personal stake of the class inheres prior to certification," *Lucero* held that a Rule 68 offer of judgment to an individual plaintiff did not extinguish a federal court's Article III jurisdiction to hear a motion for class certification. *Lucero*, 639 F.3d at 1249. *Lucero*'s conclusion was underscored by the policy concerns articulated in *Roper*, namely that mooting a class action upon the tender of full relief to a class representative would enable defendants to "pick off" individual plaintiffs, thereby frustrating the objectives of the class-action mechanism. *Id*. at 1250 (citing *Roper*, 445 U.S. at 339). Notably, *Lucero* "[did] not decide the impact of a Rule 68 offer of judgment made in a collective action, or 'opt-in' action." *Id*.; *cf. Sandoz*, 553 F.3d at 920-21 (finding that an unaccepted Rule 68 offer of judgment completely satisfying an individual plaintiff's FLSA claim moots the individual claim, but that collective action

allegations may save the action from mootness depending on the timeliness of the motion for certification); *Darboe v. Goodwill Indus. of Greater N.Y. and N. N.J., Inc.*, 485 F. Supp. 2d 221, 223 (E.D.N.Y. 2007) (finding that a Rule 68 offer of judgment affording complete relief renders a case moot despite FLSA collective action allegations).

Applying *Lucero* to the instant action, Chief Judge Krieger assumed "without necessarily finding" that Defendants' Offer of Judgment granted Plaintiff all the relief she sought insofar as it proposed to permit Plaintiff to take judgment against the Defendants in the amount of $1,363, "in addition to any other relief to which she would be entitled, including an additional equal amount as liquidated damages, costs, and a reasonable attorney's fee." (Docket #48 at 6.)  Although Chief Judge Krieger acknowledged the logic behind *Lucero*'s reticence to extend its rule to opt-in collective actions, she opined that, if pressed on the topic, the Tenth Circuit would do so. (*Id.* at 8.) Citing *Sandoz*, Chief Judge Krieger concluded that because Plaintiff had diligently filed a motion for certification, Defendants were unable to dismiss her putative representative claims on mootness grounds via Defendants' Offer of Judgment. (*Id.* at 11.)

B.      *Symczyk*

Less than a month after Chief Judge Krieger's order on Defendants' Motion to Dismiss,  the Supreme Court issued its decision in *Symczyk*.  Like the instant case, the plaintiff in *Symczyk,* also a registered nurse, sued her former employer under the FLSA's overtime provisions for time she allegedly spent working through her automatically-deducted meal breaks. 133 S. Ct. at 1527. In conjunction with its answer, the defendant hospital served the plaintiff with a Rule 68 offer of judgment for alleged unpaid wages, in addition to reasonable attorney's fees and costs. *Id*.  The plaintiff failed to accept the offer within the designated time frame, and the offer was withdrawn. *Id*.  Thereafter, the defendant hospital moved to dismiss the action for lack of subject matter

14

jurisdiction, arguing that with tender of full relief the plaintiff's claim was moot. *Id*. The district court determined that the Rule 68 offer of judgment mooted both the individual claims and the action itself; however, the Third Circuit reversed. *Id*. While the Third Circuit agreed that the unaccepted Rule 68 offer of judgment rendered the individual claims moot, it nevertheless held that the collective action survived the defendant's alleged attempt to "pick off" the named plaintiff. *Id*.

The *Symczyk* Court highlighted the agreement of both the district and circuit courts regarding the effect of the Rule 68 offer of judgment on Symczyk's individual claim. *Id*. at 1528 ("In the proceedings below, both courts concluded that petitioners' Rule 68 offer afforded respondent complete relief on–and thus mooted–her FLSA claim."). However, because the plaintiff did not file a cross-petition challenging this finding and appeared to concede the point at various stages in the appeal, the Court "assum[ed], without deciding, that [the defendant]'s Rule 68 offer mooted [plaintiff]'s individual claim." *Id*. at 1529. Notably, the Court recognized that "Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot. . ." *Id*. at 1528-29.

Though the Court declined to determine the effect of a Rule 68 offer on the viability of an individual claim, the Court announced that collective action allegations will not save an action from dismissal if the individual claim is not itself justiciable. *Id*. at 1529. (citations and internal quotations omitted) ("While the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and other employees similarly situated, the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."). In the absence of any opt-in claimants, the Court concluded that the "[plaintiff's] suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action." *Id*. Reversing the Third Circuit, the Court held the action was

appropriately dismissed as moot.  *Id.*

In support of its holding, the Court discussed at length the difference between a FLSA collective action and the class-action precedents cited by the plaintiff on appeal.  The Court noted that *Geraghty*, *Roper*, and *Sosna* were "inapposite, both because Rule 23 actions are fundamentally different from collective actions under the FLSA ... and because these cases are, by their own terms, inapplicable to these facts."  *Id.*  The Court likewise rejected the application *Gerstein* and the "relation back" doctrine developed therein because "[u]nlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations."  *Id.* at 1531.  Further distinguishing FLSA collective actions from Rule 23 class actions, the Court commented that a defendant's attempt to settle an individual's FLSA claim would not insulate the defendant's conduct or practices from review.  *Id.*  ("While settlement may have the collateral effect of foreclosing unjoined claimants from  having their rights vindicated in *respondent*'s suit, such putative plaintiffs remain free to vindicate their rights in their own suits.") (emphasis in original).  Ultimately, FLSA putative plaintiffs are "no less able to have their claims settled or adjudicated following [the plaintiff]'s suit than if her suit had never been filed at all."  *Id.*

The Court also addressed the "pick off" concern expressed in *Roper* and cited by various circuit courts to avoid a finding of mootness.  In particular, the Court clarified that (1) the *Roper* language was dicta; and (2) such dicta "was tethered to the unique significance of certification decisions in class action proceedings."  *Id.* at 1532.  Thus, even if the "pick off" rationale had the legal force of precedent, it would not apply in the FLSA context.  *Id.*  ("Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23.").

16

### C.   Defendants' Offer of Judgment

In the wake of *Symczyk*, federal appellate and district courts have reached varying conclusions regarding post-Rule-68-offer assertions of mootness. In the class action context, courts point to *Symczyk*'s sharply drawn distinctions between FLSA collective actions and proceedings under Rule 23. *Schlaud v. Snyder*, --- F.3d ----, 2013 WL 2221589, at *6 n.3 (6th Cir. May 22, 2013) (concluding that *Symczyk* was "not at odds" with appellate review of denial of class certification because *Symczyk* "does not involve class certification under Rule 23, which is fundamentally different from the collective actions under the FLSA. . ."); *Singer v. Illinois State Petroleum Corp.*, No. 12 C 9109, 2013 WL 2384314, at *1 (N.D. Ill. May 24, 2013) (distinguishing *Symczyk* based on *Symczyk*'s rejection of class/collective action comparison). Three district courts have cited *Symczyk* in support of dismissal on grounds of mootness. *See  Scott v. Westlake Serv., LLC*, --- F. Supp. 2d ----, 2013 WL 2468253, at *11, *21 (N.D. Ill. 2013) (dismissing potential class action as moot where defendant offered to pay all statutory damages and costs before plaintiff moved to certify the class); *Bilbao v. Bros. Produce Inc.*, No. 13-20535-CIV, 2013 WL 1914406, at *2 (S.D. Fla. May 8, 2013) (dismissing FLSA action as moot where defendants tendered payment for full damages, not including "prevailing party" attorney's fees or declaratory relief); *Datascope Analytics, LLC v. Comcast Cable Commc'n, Inc.*, No. 13-608, 2013 WL 2147948, at *4 (E.D. Pa. May 17, 2013) (dismissing potential class action as moot where defendant's offer of complete relief occurred before filing of class complaint and motion for class certification). At least one district court has denied a *Symczyk*-style motion to dismiss where the Rule 68 offer of judgment "did not provide complete relief" because it failed to account for attorney's fees expended in pursuit of a post-judgment determination of fees, i.e. "fees for litigating fees." *Lobianco v. John F. Hayter, Attorney at Law, P.A.*, --- F.Supp. 2d ----, 2013 WL 2097414, at *2 (N.D. Fla. May 14, 2013).

These cases highlight the primary arguments advanced by the parties in the instant action and, thus, the questions the Court must resolve in determining whether Defendants' Offer of Judgment renders Plaintiff's claims moot. In particular, the Court must decide (1) whether an unaccepted Rule 68 offer affording complete relief moots an individual FLSA claim; and if so, (2) whether Defendants' Offer of Judgment affords complete relief to Plaintiff. An affirmative finding on both questions would, under *Symczyk*, require dismissal based on mootness.

With regard to the first inquiry, *Symczyk*'s assumption of mootness requires the Court to rely other cases for guidance. *Lucero* is instructive insofar as it recognizes that "[a]s Rule 68 operates, if an offer is made for a plaintiff's maximum recovery, his action may be rendered moot." 639 F.3d at 1243. While *Lucero* qualifies this assertion by observing that the Tenth Circuit has "yet to address the question squarely," it notes that "other circuits have concluded that if a defendant makes an offer of a judgment in complete satisfaction of a plaintiff's claims in a *non-class action*, the plaintiff's claims are moot because he lacks a remaining interest in the outcome of the case." *Id.* (emphasis in original).

Despite the *Lucero* court's reluctance to apply this principle in the context of a Rule 23 class action, nothing in *Lucero* indicates that the Tenth Circuit rejects the principle itself. To the contrary, *Lucero* favorably cites several cases in which courts have recognized that an unaccepted Rule 68 offer renders moot an individual claim. *See, e.g.*, *Sandoz,* 553 F.3d at 915 (finding that plaintiff's claims "would be moot" in light of offer of judgment affording complete relief); *Rand*, 926 F.2d at 598 (internal citations omitted) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."); *Weiss v. Regal Collections*, 385 F.3d  337, 340 (recognizing that a Rule 68 offer in the amount of full available

statutory damages, plus reasonable costs and fees, would moot an individual claim in the absence of class action allegations).  Based on *Lucero* and the cases cited therein, the Court finds that a Rule 68 offer of judgment tendering complete relief eliminates the "case or controversy" of an action and, thus, justifies dismissal under Fed. R. Civ. P. 12(h)(3).

Turning to the second inquiry, the Court considers whether the Defendants' Offer of Judgment satisfied Plaintiff's claim in full.[3]  As noted above, Plaintiff's FLSA claim asserts that, because of Defendants' meal break policies, Plaintiff routinely "performed work during [her] unpaid meal breaks" for which she did not receive adequate overtime compensation.  (Docket #16 at 8-9.) In conformity with this assertion, Defendants' Offer of Judgment agrees to the entry of judgment against Defendants in the amount of $1,363.00, "including an equal amount as liquidated damages, costs, and a reasonable attorney's fee."  (Docket #41-13.)  As set forth in Defendants' April 5, 2012 letter, Defendants arrived at this figure by paying Plaintiff at her overtime rate for every break she recorded, less applicable withholdings.[4]  (Docket #41-12.)  Nonetheless, Plaintiff argues that the Defendants' Offer of Judgment is inadequate.

Although Defendants have proffered a calculation of Plaintiff's damages, Plaintiff has categorically refused to do the same.  (Docket #41-6 at 26) ("Q: How much money do you believe you are owed for work that you performed for which you were not compensated? ... A: I don't think

---

[3]As Chief Judge Krieger observed in her order on the Motion to Dismiss, Defendants attempted to satisfy Plaintiff's claims on two occasions.  At the inception of the litigation, Defendants mailed Plaintiff a letter and check for all reported breaks, plus a separate check for "liquidated damages."   (Docket #41-12.)  While the April 5, 2012 letter and checks did not reference compensation for attorney's fees, the Offer of Judgment served on June 15, 2012, was admittedly more comprehensive.  Thus, the Court will focus its analysis on the sufficiency of this latter attempt.

[4]The Court notes that the amount offered in the April 5, 2012 letter ($1,362.45) is slightly less than the $1,363.00 presented in Defendants' Offer of Judgment.  (*See* dockets ##41-12, 41-13.) However, this disparity renders Defendants' Offer of Judgment more comprehensive, not less.

the issue is dollars. I can't answer you.") As noted above, Plaintiff testified that she had no "sense on an overall basis how much time [she] worked but was not paid for." (*Id.* at 21.) Similarly, Plaintiff could not provide any estimate of "how much time [she] believed [she] worked but [wasn't] paid for[.]" (*Id.*) When presented with the April 5, 2012 letter and Defendants' Offer of Judgment, Plaintiff repeatedly refused to comment on the adequacy of the offered amount or to provide her own calculation of sufficient compensation. (*Id.* at 25-26.) Indeed, counsel for Defendants' asked Plaintiff at least three separate times how much money she believed would be adequate to compensate her. (*Id.*) Plaintiff repeatedly declined to answer the question directly and instead stated she "would prefer to see nurses treated better." (*Id.*) Notably, Plaintiff has not asserted any claim for injunctive relief, nor is such relief available to her under the FLSA. *See United Food & Commercial Workers Union v. Albertson's Inc.*, 207 F.3d 1076, 1086 (10th Cir. 2000) ("The right [] to sue for injunctive relief under the FLSA rests exclusively with the federal government.").

Plaintiff's surreply raises, for the first time, the possibility that the calculation is mistaken because it does not include work Plaintiff performed after her scheduled shift. (Docket #58 at 8.) Tellingly, Plaintiff supports her claim for post-shift work by citing to her deposition rather than to her First Amended Complaint. (*Id.* at 8 n.5.) When questioned by the Court about this assertion during oral argument, Plaintiff's counsel admitted that "the vast majority of the complaint talks about the meal break issue." However, counsel argued that Plaintiff's claim for overtime based on post-shift work was subsumed within Plaintiff's broader allegation that she was not paid for "all time worked."

The Court finds Plaintiff's attempt to expand the scope of her First Amended Complaint unconvincing. At a minimum, it violates the basic pleading standards of Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires a complaint to "contain sufficient *factual matter*,

accepted at true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted) (emphasis added). Vague or conclusory allegations will not suffice. *Id.* Ultimately, a complaint must provide a defendant not only with "fair notice of what the claim is," but also "the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even if Plaintiff's conclusory assertion that she was not "paid for all time worked" provided Defendants with fair notice of an overtime claim, she has failed to provide any indication that the "grounds upon which [such] claim rest[s]" include time Plaintiff worked after her shift. *See id.*

For the Court's part, Fed. R. Civ. P. 8(e) dictates that "Pleadings must be construed so as to do justice." In the Tenth Circuit, "when a plaintiff attempts to add a new theory- a new cause of action – late in the game, the issue has not been whether the new legal theory should be read into the complaint, but whether an amendment to the complaint should be permitted." *Zokari v. Gates*, 561 F.3d 1071, 1077 (10th Cir. 2009). Where it appears a plaintiff seeks amendment to "make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present 'theories *seriatim*' in an effort to avoid dismissal," amendment should not be permitted. *Id.* (internal citations and quotations omitted).

In this case, Plaintiff has not sought leave to amend her pleadings to include allegations of post-shift work. However, the Court is mindful of the Tenth Circuit's general rejection of "moving targets" and post-hoc efforts to avoid dismissal. The Court believes Plaintiff's assertion of post-shift work is an attempt to do just that, and thus, the Court declines to credit such allegations in determining the adequacy of Defendants' Offer of Judgment. *See also Bilbao*, 2013 WL 1914406, at *2 (recognizing that *Symczyk*'s rule discourages plaintiffs' counsel from "hid[ing] the ball in [FLSA] actions. . ."). Because Plaintiff has not disputed that the monetary amount set forth in Defendants' Offer of Judgment accounts for every break she recorded at her overtime rate, the Court

finds that Defendants' Offer of Judgment fully satisfies Plaintiff's claim for damages.

Beyond the issue of damages, Plaintiff contends that Defendants' Offer of Judgment is deficient in five other ways: (1) it does not correspond directly to the relief sought in the First Amended Complaint insofar as it does not provide for court orders designating Plaintiff's action as a collective action and Plaintiff as the representative of others who may opt-in; (2) it does not provide Plaintiff with a declaration that Defendants violated the FLSA; (3) it does not provide Plaintiff with adequate attorney's fees because more fees could be amassed in a collective action; (4) it does not account for Plaintiff's economic interest in earning an "incentive award" in a potential collective action; and (5) no Rule 68 offer of judgment can ever satisfy a FLSA claim unless it receives court approval.  The Court will consider whether the first four alleged deficiencies create a sufficient stake in the outcome to satisfy the case or controversy requirement of Article III.  *See United States v. Vera–Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007) ("Where judicial relief will not remedy the appellant's injury, the appellant can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot.") (quotations omitted).  Thereafter, the Court will assess Plaintiff's final argument pertaining to the FLSA generally.

Beginning with Plaintiff's request for "an order designating this action as a collective action and directing the issuance of notice pursuant to 29 U.S.C. § 216(b)" and "an order appointing Plaintiff and her counsel to represent those individuals opting in to the collective action," [docket #16 at 15], Defendants argue, and the Court agrees, that such demands are not sufficient to present a case or controversy.  As the Supreme Court made clear in *Symczyk*, a plaintiff has no legally cognizable interest in representing others in a FLSA collective action. 133 S. Ct. at 1529 (finding that plaintiff "lacked any personal interest in representing others" in FLSA potential collective action).  To allow, as Plaintiff urges, collective-action-type relief to sink an otherwise satisfactory

Rule 68 offer would render *Symczyk*'s central holding superfluous. *See id.* ("The mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied."). Thus, the Court finds that Defendants' Offer of Judgment need not satisfy Plaintiff's request for collective-action-type relief in order to moot her individual claim.

Turning to Plaintiff's request for declaratory relief, Plaintiff concedes that "where an individual does not have an underlying claim that same plaintiff cannot be conferred standing based solely on seeking injunctive or declaratory relief." (Docket #64 at 2.) However, Plaintiff asserts that Defendants' Offer of Judgment did not account for the breadth of her claim because, *inter alia*, it does not include an order from the court that Defendants violated her FLSA rights. While Plaintiff correctly notes that Defendants' Offer of Judgment contains no express provision for declaratory relief, Plaintiff is mistaken about the legal effect of this omission. Both the Supreme Court and the Tenth Circuit have held that a request for declaratory relief does not satisfy Article III's case or controversy requirement in the absence of a "specific live grievance" or special circumstances, such as the threat of a potential enforcement action. *See Lewis*, 494 U.S. at 479 (1990); *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1191 (10th Cir. 2012). Plaintiff has identified no special circumstance or specific live grievance beyond her desire to "see nurses treated better." However, as Plaintiff's counsel conceded on the record, even a declaration that Defendants violated the FLSA would not create any direct change in the treatment of nurses nor empower any court to enforce such a change with the threat of contempt. Though Plaintiff may derive considerable personal joy out of such a declaration, her "psychic satisfaction" is not a cognizable remedy under Article III. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 107 (1998). Thus, the Court finds that Plaintiff's request for declaratory relief does not undermine the effect of Defendants' Offer of Judgment for purposes of mootness.

With respect to attorney's fees, Plaintiff disputes the sufficiency of Defendants' offer of "a reasonable attorney's fee" because Plaintiff believes she would be entitled to a more substantial fee award if the case were certified as a collective action.   Though Plaintiff's attorney would undoubtedly incur additional fees if the case progressed through the certification of a collective action, this is not enough to create a live dispute.  First, "an interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id.*  (citing *Lewis*, 494 U.S. at 480); *WildEarth Guardians*, 690 F.3d at 1191 (request for attorney's fees not enough to present an Article III case or controversy).   Second, the Court reads *Symczyk* as rejecting potential collective-action recovery as a basis for continuing in litigation once a plaintiff's individual claim for relief is satisfied.   Thus, Plaintiff's hypothetical opportunity to recover additional attorney's fees in the event of collective action certification does not, in the Court's view, render Defendants' Offer of Judgment inadequate to satisfy and thereby moot Plaintiff's individual claim.

The Court's analysis with regard to incentive awards is similar.  As noted above, Plaintiff contends that Defendants' Offer of Judgment does not afford her complete relief because it does not account for an incentive award.  Like collective-action attorney's fees, an incentive award is a feature of recovery that is unavailable to plaintiffs asserting claims solely on their own behalf.  Even where a class action results in a settlement or judgment, an incentive award is not guaranteed. *See UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 237 (10th Cir. 2009); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000); *Robles v. Brake Masters Sys., Inc.*, 2011 WL 9717448, at *13-*16 (D.N.M. Jan. 31, 2011).  The *Symczyk* Court's conclusion that a plaintiff has no legally cognizable interest in representing others in a FLSA collective action necessarily implies that relief available only at the collective action

stage of litigation does not preclude dismissal on mootness grounds prior to certification. *See* 133 S. Ct. at 1529. Because an incentive award is, by its very nature, dependent on the certification and eventual success of a collective action, the Court cannot find, under *Symczyk*, that Plaintiff can avoid the mooting of her claim simply because Defendants' Offer of Judgment did not account for the possibility that Plaintiff could receive a discretionary incentive award following a settlement or judgment at the collective action phase. *See id.* ("In the absence of any claimant's opting in, [plaintiff]'s suit became moot when her individual claim became moot. . .").

Having determined that Defendants' Offer of Judgment included sufficient relief to moot Plaintiff's individual claim, the Court considers Plaintiff's general argument that a FLSA claim can never be mooted by a Rule 68 offer of judgment. In support of this theory, Plaintiff relies on the Supreme Court's decisions in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) and *D.A. Shulte, Inc. v. Gangi*, 328 U.S. 108 (1946). However, these decisions did not address the validity of private settlements involving bona fide disputes as to liability under the FLSA. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 621 (W.D. Tex. 2005). In their wake, Congress amended the FLSA in an effort to mitigate employer resistance to early resolution of wage claims. *See id.* at 626. Many courts have interpreted the FLSA amendment, at 29 U.S.C. § 253, as abrogating or at least limiting *O'Neil* and *Gangi*. *See id.* at 627-31. These courts have further affirmed private resolution of FLSA claims involving a bona fide dispute of liability. *Id*; *but see Lynn's Foods Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

A Rule 68 offer of judgment affording a plaintiff complete relief appears to have even greater force than a private compromise of a bona fide liability dispute. *See Mackenzie v. Kindred Hosp. E., LLC.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) (distinguishing Rule 68 offer of judgment from "compromises of FLSA claims" where defendant represents and plaintiff does not dispute that

plaintiff has been offered full compensation on his claim); *see also Picerni v. Bilingual Seit & Preschool, Inc.*, --- F. Supp. 2d ----, 2013 WL 646649, at *4 (E.D.N.Y. 2013) (denying motion to approve settlement as moot where defendant tendered and plaintiff accepted Rule 68 offer of judgment). As the *Mackenzie* court observed, "Rule 68 [] contains no exclusion that precludes its application in a FLSA case," nor does it conflict with the policy concerns animating jurisprudence thereunder. *Id.* at 1216-17. To the contrary, the Supreme Court has announced that "nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course." *Symczyk*, 133 S. Ct. at 1529 n. 4. In light of the trend of authority distinguishing claim-satisfying Rule 68 offers of judgment from traditional private compromises and in accordance with the Supreme Court's recognition that a FLSA claim can be mooted without court approval, the Court concludes that the FLSA does not prevent Defendants' Offer of Judgment from mooting Plaintiff's claim in this case.

The Court's conclusion that Defendants' Offer of Judgment renders Plaintiff's FLSA claim moot is underscored by the fundamental principles at work in Article III. At its core, Article III limits the jurisdiction of federal courts to live cases or controversies. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). A plaintiff's "refusal of the relief [s]he initially sought suggests an attempt to use the judicial system in a manner in which it was not intended to be employed." *Scott*, 2013 WL 2468253, at *19 (citing *Holstein v. City of Chicago*, 803 F. Supp. 205 (N.D. Ill. 1992)). Federal courts need not tolerate any such pursuit to "manipulate the judicial system by continuing to litigate [a] cause of action after it has become moot." *Id.* The Court is concerned that a similar motive exists here, particularly as Plaintiff has repeatedly refused to provide any quantitative estimate of her damages or to substantively comment on Defendants' estimate of the same. The Court shares Judge Posner's view that "[y]ou cannot persist in suing afer you've won." *See Greisz v. Household*

*Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999).

## II.       Merits

In the absence of subject matter jurisdiction, the Court need not consider the merits of Plaintiff's FLSA claim or Defendants' Motion for Summary Judgment contesting the same. However, in the interest of thoroughness, the Court further observes that Plaintiffs' refusal to provide any calculation of overtime hours worked in a given week presents problems in this arena, as well. In particular, it prevents Plaintiff from demonstrating, as she must, that she worked more than 40 hours in a specific week for which she did not receive adequate overtime compensation. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) ("To succeed on a claim for unpaid overtime, the plaintiff has the burden of proving that he performed work for which he was not properly compensated.").

Citing Plaintiff's deposition testimony, Defendants argue that Plaintiff has failed to identify any time during which she performed unpaid work resulting in FLSA overtime because: (1) Plaintiff could neither "confirm nor deny" whether she was correctly paid for work during the majority of her shifts; and (2) she only identified two instances where her payroll records were allegedly inaccurate. With respect to the latter deficiency, Plaintiff could not say whether the inaccuracy arose from time spent working during meal breaks or time spent working after Plaintiff had clocked out. For the occasions on which Plaintiff identified excess hours, Defendants note that her total hours for those weeks were so low that even with the additional time, she would not have incurred over 40 hours in that week. In light of Plaintiff's failure to identify specific amounts of time worked that would have resulted in overtime, Defendants argue that summary judgment is warranted. The Court agrees. *See Kolesnikow v. Hudson Valley Hosp. Center*, 622 F. Supp. 2d 98, 118-19 (S.D.N.Y. 2009) (granting summary judgment for employer where plaintiff testified that she "sometimes"

worked an extra half hour but could not show that such hours would have caused her to exceed 40 hours of work in any given week); *Taylor v. McLane Foodservice, Inc.*, No. 12-2697-JWL, 2013 WL 943531, at *3-4 (D. Kan. Mar. 11, 2013) (citing *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996) (noting that the "vast majority of district courts that have addressed this issue are in accord with the circuit authority" holding that "[i]f the employee has not worked any overtime and has received an hourly wage equal to or in excess of the statutory minimum wage, there can be no FLSA violation.").

In *Kolesnikow*, the court granted summary judgment for the employer where the plaintiff had failed to show that the amount of extra time she worked in a given week exceeded 40 hours. 622 F. Supp. 2d. at 119. Notably, the *Kolesnikow* plaintiff's regular schedule required her to work 36 hours per week, meaning she could have worked an additional four hours before she was entitled to overtime compensation. *Id*. at 118-19. Where the *Kolesnikow* plaintiff had produced evidence of exceeding 40 hours per week two to three times a month, the defendant showed she received overtime compensation. *Id*. at 119. Because plaintiff did not provide any facts showing she worked more than that amount of overtime for which she was compensated, summary judgment was warranted. *Id*. The *Kolesnikow* court noted that where summary judgment had not been appropriate, plaintiffs provided more particularized testimony of the number of hours worked during a specific time period or the number of times per week they worked past the end of their shifts. *Id*.

The Court's research indicates that several other courts have followed *Kolesnikov* in granting summary judgment where plaintiffs have presented only vague language that they "often worked more than 40 hours" or worked over 40 hours "pretty much every week." *See DiSantis v. Morgan Prop. Payroll Serv.*, No. 09-6153, 2010 WL 3606267, at *14 (E.D. Pa. Sept. 16, 2010) (citing *Kolesnikow* and a litany of cases in which summary judgment entered for an employer based on a

plaintiff's failure to produce evidence beyond bare allegations and vague undocumented estimates of work weeks exceeding 40 hours). In this case, Plaintiff has provided little more than vague estimates of work during meal breaks. For those dates where Plaintiff has identified a discrepancy, her weekly hours were so low that payment of FLSA overtime would not have been required. *See Kolesnikow*, F. Supp. 2d. at 118-19. Therefore, the Court would recommend summary judgment in favor of Defendants in the event that the action is not dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

As set forth above, the Court finds that Defendants' Offer of Judgment fully satisfies Plaintiff's individual claim for relief under the FLSA. Under *Symczyk* and *Lucero*, such an offer moots Plaintiff's claim and, thus, deprives the Court of subject matter jurisdiction over this action. Alternatively, Plaintiff's FLSA claim fails on the merits because Plaintiff has not come forward with sufficient evidence to convince a reasonable jury that she worked more than 40 hours in a given week without receiving appropriate compensation. Therefore, the Court respectfully RECOMMENDS that the Defendants' Motion for Summary Judgment [filed February 25, 2013; docket #41] be **GRANTED**.

Dated and entered at Denver, Colorado, this 1st day of July, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge